JOHN TISMAN v. SCHOOL-DISTRICT No. 10 OF THE TOWN-SHIP OF ST. CLAIR.

*Landlord and tenant—Lease—Estoppel—Evidence—Impeachment of witness—Directing verdict.*

1. A lessor who has received the full consideration for his lease cannot question the right of his lessee to hold.

2. In an action of ejectment against a school-district to recover half an acre of land occupied as a school-house site, the title of the plaintiff was admitted, subject to the rights of the defendant as lessee of a former owner, through whom the plaintiff traced his title. The lease was lost, and the defendant was allowed to prove its contents by parol, and for that purpose swore three witnesses, one of whom was the lessor, who testified to the execution of the lease for a term of 50 years, or so long as the land was used for school purposes. Plaintiff introduced no evidence in regard to the lease, except to show that the lessor had stated that the district had no lease or deed, and, if a lease was given, it was not for over 25 years, and that he did not know that he ever gave a lease. The testimony of the remaining witnesses was undisputed, and there was no dispute but that the defendant took possession under a lease, and paid the lessor $15 as a consideration for it, and had held undisputed possession for over 30 years. A tenancy was admitted by the

plaintiff, who had given notice to terminate it.  And it is held that—

*a*—The testimony to the contradictory statements of the lessor could only be used to impeach him, he not being a party to the suit, and such statements not being binding on the party in interest; citing *Howards v. Patrick*, 38 Mich. 804; *Brown v. Dean*, 52 Id. 269; *Catlin v. Railroad Co.*, 66 Id. 358.

*b*—Had the case rested upon the lessor's testimony alone, the question of the execution of a lease, and its term, should have been submitted to the jury; but, as the testimony of the other witnesses was positive and unimpeached, a verdict should have been directed for the defendant.

Error to St. Clair.  (Canfield, J.)  Argued February 19, 1892.  Decided March 4, 1892.

Ejectment.  Defendant brings error.  Reversed.  The facts are stated in the opinion.

*Avery Bros. & Walsh* ( *W. L. Jenks* and *Lincoln Avery,* of counsel), for appellant.

*John M. Kane* (*S. W. Vance,* of counsel), for plaintiff.

GRANT, J.  Ejectment to recover possession of a small parcel of land in the N. W. corner of the S. ½ of the S. W. ¼ of section 6, township 5 N., range 16 E., which had been used and occupied by the defendant for school purposes for from 35 to 40 years prior to the commencement of this suit.

Plaintiff showed title to the entire land by patent from the United States government to one Porter, and from Porter, through other persons, to himself, and upon the introduction of these conveyances rested his case.

Defendant claimed under a lease executed by one Reddick Hubbel to it in the year 1858 or 1859.  The lease was lost, and its loss was sufficiently proven.  The defendant then gave parol evidence of its contents.  Its execution and contents were testified to by three witnesses, the

substance of which is as follows:   Hirman Hubbel testi-
fied:

"We got the land for one-half acre.   Am now director,
and have held all the offices.   I was at Reddick Hubbel's
when the lease was signed.   Adam Gaffield, Elias Will-
iams, Reddick Hubbel, and his wife and daughter were
present at the time.   *   *   *   I saw the lease and
read it at the time it was signed by my brother.   As
near as I can recollect, it was for fifty years, or as long
as we wanted it for school purposes.   I think Williams,
Gaffield, and Hubbel and wife signed the lease.   Think
it was given to Gaffield."

Adam Gaffield testified:

"I was director.   We accepted Hubbel's proposition to
take a lease for fifty years, or so long as we wanted it
for school purposes, and pay him $15.   *   *   *
There was a lease given of this property by Reddick
Hubbel and his wife.   *   *   *   The lease was in
writing.   *   *   *   I wrote the lease.   *   *   *
Lease was for fifty years, or so long as they used it for
school purposes.   *   *   *   The lease was delivered
to me."

Reddick Hubbel testified:

"I gave the lease of the land.   It was written by Gaf-
field.   My wife and I signed it.   *   *   *   It was for
fifty years, or so long as they used it for school purposes.
Am sure of it.   Saw it, and know it is so.   Received
$15 from the district."

The records of the school-district were offered in evidence,
commencing in September, 1857.   The district became
legally organized either in 1857 or 1858.   November 5,
1857, a resolution was passed, fixing the school-house
site on Mr. Hubbel's land.   September 26, 1859, at the
annual school-meeting, it was voted that the site for
the school-house be on the ground where the old one
stands.   Previous to the legal organization of the district,
a log school-house had been erected, and a school main-
tained by the payment of rates by the few inhabitants in

the district. The present school-house was located where the log house stood. By the resolution of 1857, it was evidently contemplated to locate the school-house on another part of Mr. Hubbel's land; but at the annual meeting in 1859, it was decided to retain the old site. At the same meeting the following resolution was passed:

"Voted we pay $15 for the school-house site to Reddick Hubbel, for one-half acre of land."

A new school-house was erected shortly after upon this land, and a school has been taught there every year since.

Plaintiff introduced no evidence in regard to this lease, except to show that Reddick Hubbel had stated that the district had not any deed or lease; that, if a lease was given at all, it was not for over 25 years; and that he did not know that he ever gave a lease.

The court instructed the jury that there were two questions for them to decide:

1. Whether any lease was made.
2. Whether, if one was made, it was for a term of 25 or 50 years.

1. The testimony of the witnesses to the contradictory statements claimed to have been made by Reddick Hubbel could only be used to impeach Mr. Hubbel, who was not a party to the suit, and whose hearsay statements were not binding upon the party in interest. Such testimony cannot be used to establish any material fact in the case. *Howards v. Patrick*, 38 Mich. 804; *Brown v. Dean*, 52 Id. 269; *Catlin v. Railroad Co.*, 66 Id. 358. The learned circuit judge so instructed the jury. The result of the application of this rule would be the exclusion of Mr. Hubbel's testimony from consideration, if the jury believed the impeaching witnesses. Had the case rested upon his testimony alone, the question should have been submitted

90 MICH.—33.

to the jury. But the testimony of the other two witnesses to the execution and contents of the lease was positive and unimpeached. A tenancy was admitted by the plaintiff, who had given notice to terminate it. No doubt existed that the defendant took possession under a lease, and had paid Mr. Hubbel $15 as the consideration for it, and had continued in undisputed possession for over 30 years. We think the circuit judge should have directed a verdict for the defendant.

2. A witness was permitted to testify that at a school-district meeting, in 1886 or 1887, he made a motion calling upon plaintiff to give the district a deed of the land. This motion was not even put to a vote, and furthermore appears to have been made after the meeting had adjourned. This testimony was incompetent. It has no tendency to disprove the lease or its contents.

3. It is insisted by plaintiff's counsel that the lease was in fact executed before the district was legally organized, and while the school was conducted under the voluntary organization of the inhabitants. The plaintiff and his grantor, Mr. Hubbel, are estopped to raise this question. A lessor who has received the full consideration for his lease cannot question the right of his lessee to hold. The possession of the defendant was notice to plaintiff of its rights. It is therefore immaterial to determine whether the lease was executed before or after the legal organization of the district.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.