RUHALA *v.* ROBY.

DECISION OF THE COURT.

1. EVIDENCE—PRIOR INCONSISTENT STATEMENTS—SUBSTANTIVE EFFECT.

Judgment of trial court and Court of Appeals on verdict of no cause of action as to one defendant in automobile negligence action for wrongful death is affirmed on the grounds that trial court's exclusion of parts of deposition and prior inconsistent statements of codefendant was error only as to codefendant, who was dismissed on motion for directed verdict, and not error as to defendant against whom appeal was taken, because prior inconsistent statements could constitute substantive evidence only against the party who made such statements, and not his codefendant, per DETHMERS, C. J., and SOURIS, O'HARA, and BRENNAN, JJ.; KELLY, J., concurring in result; dissent by BLACK, T. M. KAVANAGH, and ADAMS, JJ., on the grounds that prior inconsistent statements of codefendant constituted substantive evidence of facts to which they related, and it was error to exclude them as to defendant as well as to codefendant.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 500.
[2] 23 Am Jur 2d, Depositions and Discovery § 2.
[3–5] 23 Am Jur 2d, Depositions and Discovery § 106.
[6] 29 Am Jur 2d, Evidence § 5.
[7] 23 Am Jur 2d, Depositions and Discovery § 60.
[8, 10] 29 Am Jur 2d, Evidence § 500.
[9] 58 Am Jur, Witnesses § 560.
[11] 29 Am Jur 2d, Evidence §§ 657, 658.
[12] 29 Am Jur 2d, Evidence §§ 500, 657.
[13, 14] 29 Am Jur 2d, Evidence §§ 500, 657, 658.
[15] 29 Am Jur 2d, Evidence § 500.
[16] 58 Am Jur, Witnesses § 610.
[17] 29 Am Jur 2d, Evidence § 657.
[18] 58 Am Jur, Witnesses §§ 565, 666.
[19] 58 Am Jur, Witnesses §§ 676, 784.
[20] 5 Am Jur 2d, Appeal and Error § 797.
[21, 24] 23 Am Jur 2d, Depositions and Discovery § 106.
[22, 23, 27] 23 Am Jur 2d, Depositions and Discovery § 106; 29 Am Jur 2d, Evidence §§ 500, 657, 658; 58 Am Jur, Witnesses § 560.
[25, 26] 23 Am Jur 2d, Depositions and Discovery § 106; 58 Am Jur, Witnesses § 560.

SEPARATE OPINION.

DETHMERS, C. J., and SOURIS, O'HARA, and BRENNAN, JJ.

2. DEPOSITIONS—EVIDENCE—COURT RULES.

*The court rules contemplate two entirely different kinds of depositions, and outline the practice governing the use and effect of each kind of deposition (GCR 1963, 302.4, 302.6).*

3. SAME—USE—ADVERSE PARTIES.

*The court rules permit use of depositions of an adverse party in an action in a manner similar to the use permitted of testimony of adverse parties at the trial, by permitting the deposition to be used by an adverse party without making the deponent the adverse party's own witness, or use in which the deponent is made the introducing party's own witness (GCR 1963, 302.4[2], 302.4[3], 302.6).*

4. SAME—ADVERSE PARTY—USE—ANNOUNCEMENT.

*Announcement by counsel of his purpose in offering deposition of an adverse party, and the court rule pursuant to which the deposition is offered, will not be strictly required when under all of the facts and circumstances the intended use of the deposition at trial is apparent, although the better practice would be for such announcement to be made in every case (GCR 1963, 302.4[2], 302.4[3], 302.6).*

5. SAME—ADVERSE PARTY—USE.

*Use of the deposition of one defendant at trial, when that defendant was present in the courtroom and had not yet been called by any party for examination, did not make the defendant deponent the witness of the party using his deposition, and did not require an announcement of the purpose for which the deposition was offered, when the circumstances showed that it was not being offered because of unavailability of the witness, nor to impeach the witness, and the only permissible use of the deposition would be pursuant to the rule paralleling cross-examination of an adverse party (GCR 1963, 302.4[1], 302.4[2], 302.4[3], 302.6).*

6. TRIAL—EVIDENCE—EXCLUSION—RECORD—OBJECTION.

*Making of exclusionary rulings as to admissibility of evidence in chambers with no stenographic record is not a desirable trial practice, because the specific ground of objection to evidence tendered is often a controlling factor of appeal.*

7. SAME—EVIDENCE—DEPOSITIONS—USE—METHOD.

*The court rule contemplates that depositions will be read question by question, so that objections to specific questions can be made and ruled upon on the record (GCR 1963, 302.5).*

8. Evidence—Depositions—Prior Inconsistent Statement—Foundation.

> Testimony in deposition of one defendant in action arising out of automobile collision, that it was his impression just before the collision that a woman was driving the car with which he collided, laid the proper foundation for introduction of prior inconsistent statements by deponent to impeach him, where one of the issues in the lawsuit was whether the woman, plaintiff's decedent, was driving the car or whether the other defendant was driving (GCR 1963, 302.6).

9. Witnesses—Adverse Party—Depositions.

> Refusal by a trial court to permit plaintiff to call one defendant for cross-examination under the statute, based on erroneous ruling that plaintiff had made that party his own witness by use of that party's deposition in evidence, was error, but not reversible under the circumstances (CLS 1961, § 600.2161).

10. Evidence — Prior Inconsistent Statements — Substantive Value.

> The general rule when a witness is not a party to an action is that prior statements made by the witness in conflict with his testimony in the suit may be considered as bearing upon his credibility but not as substantive evidence in the case.

11. Same—Admissions—Codefendant.

> Admissions of one defendant in an action, while they may constitute substantive evidence against that party, are not admissible in evidence against a codefendant as substantive evidence against him.

12. Same—Prior Inconsistent Statement—Adoption—Substantive Value.

> Admission by a defendant in an action that a prior inconsistent statement made by him was true constitutes adoption of that prior statement, and it may be used as substantive evidence in the case.

13. Same—Prior Inconsistent Statements—Admissions—Effect.

> Prior inconsistent statements, admitted to be true by one defendant in an action upon cross-examination, constitute substantive evidence against that party, because they constitute admission, but are not for that reason admissible against a codefendant who has not admitted their truth.

14. SAME—PRIOR INCONSISTENT STATEMENTS—IMPEACHMENT—SUBSTANTIVE EFFECT.

*Prior inconsistent statements of one defendant in an action, offered in evidence to impeach him, do not constitute substantive evidence against a codefendant in the lawsuit unless they are admitted to be true by first defendant in his testimony.*

15. SAME—HEARSAY—PRIOR INCONSISTENT STATEMENTS.

*The hearsay rule excludes from evidence extrajudicial statements which are offered for the purpose of proving the truth of the thing said; hence, prior inconsistent statements not offered to prove the truth of the thing said, but to affect the credibility of the witness, should not be considered an exception to the hearsay rule.*

16. TRIAL—CROSS-EXAMINATION.

*Cross-examination is, in its essence, an adversary proceeding.*

17. EVIDENCE—PRIOR STATEMENT—ADMISSIBILITY.

*A witness who adopts a prior statement makes that statement present testimony and it then becomes admissible substantive evidence.*

18. WITNESSES—CONCLUSIONS—EVIDENCE.

*A witness's expression that another person had to have been doing something, or must have been doing something this way or that way, thereby betrays that he is stating his conclusions, rather than his observations.*

19. EVIDENCE—CROSS-EXAMINATION—RECANTED VERSION.

*A cross-examination that effects a change of story by a witness thereby destroys the recanted version as substantive evidence.*

20. APPEAL AND ERROR—PARTIES—ADMISSIONS AND EXCLUSIONS OF EVIDENCE.

*Rulings on admission and exclusion of evidence which constituted reversible error with respect to one defendant, against whom an appeal was not taken, but which were not erroneous as against other defendant, against whom appeal was taken, do not require reversal and a new trial.*

DISSENTING OPINION.

BLACK, T. M. KAVANAGH, and ADAMS, JJ.

21. DEPOSITIONS—EVIDENCE—ADVERSE PARTY—USE.

*The only restriction upon the use of deposition of an adverse party under the present court rules is the test of admissibility of the deposition under the rules of evidence (GCR 1963, 302.4[2]).*

22. SAME—ADVERSE PARTY—USE—CROSS-EXAMINATION.

*Plaintiff in automobile negligence action was entitled to have the entire deposition of one defendant, driver of second car in accident, read before the jury as part of his case in chief, both as cross-examination of an adverse party designed to draw out admissions against that party's interest and also as substantive proof on issue of who was driving car in which plaintiff's decedent was riding, such substantive proof being admissible against the defendant whose deposition was read and his codefendant who was alleged by plaintiff to have been driver of plaintiff's car.*

23. SAME—ADVERSE PARTY—SUBSTANTIVE EVIDENCE.

*Plaintiff was entitled to have deposition of one defendant in automobile negligence case read into evidence in its entirety, except for reference to insurer, including part where deponent testified that plaintiff's decedent was driving the car, followed by questions about prior inconsistent statements made by that deponent in which he said that other defendant was driving car, and to have such prior inconsistent statements considered as substantive evidence against both defendants that codefendant of deponent was driving car at the time of collision.*

24. SAME—ADVERSE PARTY—PRESENCE IN COURT—USE.

*The deposition of an adverse party may be introduced in evidence at a trial for purposes other than impeachment, even if the party deponent is present in court, under the present court rules.*

25. SAME—ADVERSE PARTY—CROSS-EXAMINATION—EVIDENCE.

*The right to call an adverse party for cross-examination under the statute and the right to introduce the deposition of an adverse party for any purpose under the court rules are separate and independent rights, and a party may, at his election, employ either or both (CLS 1961, § 600.2161; GCR 1963, 302.4[2], 507.4).*

26. SAME—ADVERSE PARTY—CROSS-EXAMINATION—EVIDENCE.

*Plaintiff who had introduced deposition of one defendant into evidence was not thereby foreclosed from calling that same party for cross-examination under the statute, and it was error for the trial court to refuse to allow such cross-examination (CLS 1961, § 600.2161).*

27. SAME—PRIOR INCONSISTENT STATEMENT—CROSS-EXAMINATION—EXCLUSION—EVIDENCE.

*Exclusion by trial court of parts of deposition of one defendant in automobile negligence case in which defendant was ques-*

tioned about prior inconsistent statements, and refusal of trial
court to allow cross-examination of that defendant under the
statute on the theory that plaintiff had adopted him as plain-
tiff's witness by use of his deposition, were errors as to both
defendants in case, where prior inconsistent statements could
serve as substantive evidence adverse to second defendant, and
plaintiff who has appealed from verdict and judgment of no
cause of action as to second defendant only is entitled to
reversal and a new trial (CLS 1961, § 600.2161; GCR 1963,
302.4, 507.4).

Appeal from Court of Appeals, Division 2; Lesin-
ski, C. J., T. G. Kavanagh, and Quinn, JJ., affirming
Shiawassee, Carland (Michael), J. Submitted Jan-
uary 5, 1967. (Calendar No. 1, Docket No. 51,456.)
Decided May 2, 1967. Rehearing denied July 21,
1967.

2 Mich App 557, affirmed.

Complaint by Richard Ruhala, administrator of
the estate of Esther Kingsley, against James Roby
and William Burditt for the wrongful death of
decedent in an automobile accident. Directed ver-
dict and judgment for defendant Burditt. Verdict
and judgment for defendant Roby. Judgment af-
firmed by Court of Appeals. Plaintiff appeals.
Affirmed.

*Leitson, Dean, Dean, Abram & Segar* for plaintiff.

*Des Jardins & Des Jardins,* for defendant Roby.

BRENNAN, J.:

STATEMENT OF FACTS.

On December 7, 1963, Esther Kingsley was in-
jured in an auto collision at about 8:25 a. m. on
the Dixie Highway in Saginaw County. She died
the same morning at 9:30 at St. Mary's Hospital

in Saginaw. On May 25, 1964, the plaintiff, administrator of the estate of Esther Kingsley, filed a wrongful death complaint seeking damages against James Roby and William Burditt. He claimed that Esther Kingsley was a nonguest passenger in her own Chevrolet, being driven by Roby, who collided with a pick-up truck driven by Burditt, due to the negligence of both drivers. On June 2, 1964, Roby filed an answer in the cause in which he denied that he was driving the Chevrolet automobile in which the plaintiff's decedent was an occupant. He alleged affirmatively that the plaintiff's decedent was the driver of the car. And he further alleged that the vehicle was being operated by plaintiff's decedent in a reckless and negligent manner and at a high rate of speed. On June 19, 1964, the defendant Burditt filed his answer. He denied negligence on his part and affirmatively alleged that the sole cause of the collision was the negligence of the driver of the decedent's automobile. In paragraph 2 of his answer, Burditt admitted that James Roby was operating the death car.

On December 7th, the day of the accident, at about 2:30 in the afternoon, defendant Burditt had given a statement to one Gerald Hough, a state trooper. In this statement, the following question and answer appears:

"*Q.* William, you said earlier that the woman was on your side when you hit. So would you say that the man in the car was driving?

"*A.* He had to been, there was a man driving."

Two days later, on December 9, 1963, the defendant Burditt gave another statement to a man named Donald Cook. This statement was also reduced to writing in question and answer form. It contains the following:

"*Q.* I see, do you know who was driving the other car?

"*A.* Well, I'll tell you the same as I told the State police and his wife, the woman was not driving the car."

On September 15, 1964, before the case came up for trial, the deposition of Burditt was taken for the purpose of discovery. On the deposition, Burditt testified that there was a woman behind the wheel, whereupon the examiner asked Burditt a number of questions concerning the two prior statements he had given to Hough and Cook. Burditt conceded making the prior statements, but was never asked whether his prior statements were true.

The trial of the cause commenced on March 17, 1965. William Burditt was present in the courtroom during the trial. During the presentation of the plaintiff's case in chief, plaintiff moved to admit into evidence the discovery deposition of the defendant Burditt. Thereupon a conference was had with the court in chambers. The court excluded the portions of the deposition having to do with the examination of Burditt on his two prior extrajudicial statements. It should be noted also that in offering Burditt's deposition into evidence the plaintiff did not indicate the purpose for which the offer was made, nor the court rule under which the deposition was claimed to be admissible. Burditt at that point had not been called as a witness in the trial.

Since the conference on the admissibility of the specific questions and answers in the deposition was had in chambers, and since no stenographic record was made of the discussion in chambers between the court and counsel, the reason for the exclusions that were made does not immediately appear in

the record. Later, however, the trial judge indicated on the record that the reason for the exclusion of those portions of the deposition had to do with his feeling that no foundation had been laid. More on that later. Plaintiff proceeded to read the deposition into evidence, omitting the portions which the court had ruled to be inadmissible.

On the following day of trial, March 18, 1965, plaintiff called the defendant Burditt as an adverse party for cross-examination. Objection was made and the court ruled that the plaintiff could not call defendant Burditt under the statute for cross-examination, after having introduced his deposition. The court ruled that by the use of the deposition, plaintiff had made Burditt his own witness. A separate record out of the presence of the jury was made, in which the plaintiff was permitted to cross-examine Burditt fully as an adverse party. After the separate record was made, the plaintiff, pursuant to the court's ruling, called defendant Burditt as his own witness. At the conclusion of the plaintiff's case, defendant Burditt made a motion for directed verdict, which was granted on the ground that there was no evidence of any negligence on the part of Burditt which could go to the jury. A judgment in favor of Burditt was entered upon this directed verdict and no appeal has been taken therefrom. In due course, plaintiff's case against defendant Roby went to the jury and the jury found no cause of action. An appeal was taken after a motion for a new trial was denied.

The Court of Appeals affirmed the trial judge,[1] saying, among other things, that under the circumstances of this case the deposition of Burditt could be used for impeachment purposes only and that none of the depositions should have been received

---

[1] 2 Mich App 557.—REPORTER.

in evidence.[2]   The Court of Appeals further held
that in the light of the procedure followed in this
case, the plaintiff had made Burditt his own wit-
ness and the trial court did not err in denying
plaintiff's request to call defendant Burditt for
cross-examination under the statute.

## I. The Use of the Deposition.

The first question which must be answered in
this case is: Was the plaintiff entitled to read the
deposition of William Burditt into evidence? This
question must be answered because the Court of
Appeals has stated flatly that in its opinion none
of the depositions should have been received in
evidence.   Although this discussion is actually a
blind alley so far as the decision in this case is
concerned, the matter is an important one to the
bench and bar, and merits our interpretation of
the applicable court rules.   It is important to note
at the outset that there are two entirely different
kinds of depositions contemplated by the rules.
On the one hand, there are depositions of mere
witnesses who are not parties to the lawsuit.   On
the other hand, there are depositions of parties,
their officers, directors, agents and employees.   The
practice governing the use and effect of these two
distinct and different types of depositions is clearly
outlined in the court rules.[3]   The difficulty in this
case lies in the fact that under our trial practice
it is possible for a party to call his adversary in
one of two ways: either for cross-examination
under the statute,[4] or as his own witness.   If the
former result is desired, counsel is required to an-
nounce the purpose for calling the witness.[5]

[2] 2 Mich App at 563.—Reporter.
[3] GCR 1963, 302.4, 302.6.
[4] CLS 1961, § 600.2161 (Stat Ann 1962 Rev § 27A.2161).
[5] *Mally* v. *Excelsior Wrapper Co.* (1914), 181 Mich 568.

The Court Rules permit parallel options in the use at trial of depositions. If the deposition of a party or his agent is offered under GCR 1963, 302.4(2),[6] there is a use of the deposition which parallels the calling of an opposite party for cross-examination under the statute.[7] If the deposition of an adverse party, however, is offered under General Court Rule 1963, 302.4(3),[8] it parallels the calling of an adverse party as a witness without announcing the purpose therefor and makes the deponent the witness of the party calling him. If, as we have seen, the use of depositions parallels the calling of witnesses at trial, it would be good practice for counsel to announce his purpose in offering the deposition, and better practice for counsel to indicate the court rule pursuant to which he offers the deposition. It is possible to conceive of situations in which such a failure would have the effect of making the deponent the witness of the party offering the deposition. Nevertheless, the making of such announcement will not be strictly required when under all of the facts and

---

[6] "(2) The deposition of a party or anyone who at the time of the transaction or occurrence out of which the action arose or at the time of taking the deposition was an officer, director, employee, or agent of any party may be used by an adverse party for any purpose."

[7] Gilmore, 1 Michigan Civil Procedure Before Trial (ICLE), pp 635, 636, 637.

[8] "(3) The deposition of a witness, whether or not a party, when properly filed in accordance with subrule 306.6(1) or subrule 307.2, may be used by any party for any purpose if the court finds: [1] that the deponent is an expert witness; or [2] that the witness is dead; or [3] that the witness is at a greater distance than 50 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or [4] that the witness is unable to attend or testify because of age, sickness, insanity, infirmity, or imprisonment; or [5] that the witness is not subject to process or that the party offering the deposition has been unable to procure the attendance of witnesses by subpoena; or [6] upon motion and notice that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

circumstances the intended use of the deposition is apparent. In the instant case, Burditt was present in the courtroom at the time his deposition was offered and he had not yet testified in the case. Therefore, it was obvious that his deposition was not being offered because of his unavailability under Rule 302.4(3), nor was it being offered to impeach him under Rule 302.4(1). To have permitted the use of the deposition under Rule 302.4(1) or 302.4(3) would have been error under the circumstances, and error will not be presumed. Thus, it is obvious that the deposition of William Burditt was offered, though no announcement was made, pursuant to Rule 302.4(2), paralleling cross-examination of an adverse party.

By such use of the defendant's deposition plaintiff did not make Burditt his own witness. GCR 1963, 302.6 clearly indicates this:

".6 Effect of Taking or Using Depositions. A party shall not be deemed to make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of impeaching the deponent makes the deponent the witness of the party introducing the deposition, *but this shall not apply to the use by an adverse party of a deposition as described in subrule 302.4(2)."* (Emphasis supplied.)

It is thus concluded that there was no error in permitting the Burditt deposition to be read in evidence. And under the circumstances of this case the introduction in evidence of Burditt's deposition did not make Burditt plaintiff's witness.

II. THE EXCLUDED PORTION OF THE DEPOSITION.

This brings us to the second question in the lawsuit, and that is whether there was error in

excluding those portions of the Burditt deposition
which the trial court did not permit the plaintiff
to read to the jury. As has been noted, this ex-
clusionary ruling was made in chambers with no
stenographic record. This is most unfortunate
and it is not a desirable trial practice. The specific
ground of objection to evidence tendered is often
a controlling factor on appeal. The court rule con-
templates that depositions will be read question by
question, so that objections to specific questions
can be made and ruled upon.[9]  And where the argu-
ments of counsel and reasons of the court do not
appear on the record, the appellate court can only
speculate on the basis for the ruling and the cor-
rectness thereof. In this case, however, we are
assisted in part by the opinion of the trial court
as rendered on the record at the time the motion
for a new trial was made. The pertinent portion
of that opinion is as follows:

"Now those portions of the deposition which
were excluded were those having to do with an
alleged prior statement made by the defendant
Burditt wherein he at least indicated in one por-
tion, as I recall, that a man was driving the car;
that was his first impression, or something of the
sort. That portion was excluded because of the
failure of the person who took the deposition to
lay a proper foundation. In other words, no ques-
tion was asked, 'Who do you say, Mr. Burditt, was
driving the car when you first saw it?' No answer
was elicited to such a question, so there is nothing
in the deposition to show that any statement being
made by the witness at the time of the taking of

---

[9] GCR 1963, 302.5

".5 Objections to Admissibility. Subject to the provisions of sub-
rule 308.3, objection may be made at the trial or hearing to receiving
in evidence any deposition or part thereof for any reason which
would require the exclusion of the evidence if the witness were then
present and testifying."

the deposition was inconsistent with the statement which is alleged he had given sometime prior thereto. The court excluded that portion of the deposition having to do with this claimed prior inconsistent statement because of the lack of foundation. As attempted in the deposition, it amounted to no more than offering the prior statement as an exhibit and not for the purpose of impeaching a statement being made in the deposition because no such questions were asked of him."

This ruling does not jibe with the record in the case. Immediately prior to the excluded portion of the deposition the following questions and answers appear:

"*Q.* Could you tell me the sex of the passengers in the car?

"*A.* Pardon?

"*Q.* The sex of the passengers in the car?

"*A.* It looked to me like a man and a woman.

"*Q.* And which side was the woman sitting on?

"*A.* I have a picture in my mind that when that car first started to come around, like that, that *this woman was behind the wheel,* that is just the impression I got, and I still have that picture in my mind. It seems when we hit, she was over to my side of the car, what I mean, not my side, I mean the side that I hit on the car.

"*Q.* Then you saw the woman in the car just before you hit?

"*A.* I don't know what I saw then, I can't tell you." (Emphasis supplied.)

Surely the substance of Burditt's testimony at that point was *that a woman was behind the wheel,* and it certainly represented a proper foundation to permit the plaintiff to present prior inconsistent statements for impeachment purposes. If the right of the plaintiff to impeach Burditt on this point were the controlling issue in the lawsuit, our appellate

result would be clear at this juncture. But the mere impeachment of Burditt is not the ultimate question to be decided.

Plaintiff has not appealed the judgment entered in Burditt's favor against him. Plaintiff has appealed only the judgment rendered in Roby's favor against him. The erroneous ruling excluding Burditt's prior inconsistent statements is not reversible in this appeal from the verdict and judgment in favor of Roby unless the excluded portions of the deposition constituted substantive evidence which the jury should have been permitted to consider in determining whether Roby was or was not the driver of the car in which Mrs. Kingsley was injured. A complete discussion of the substantive value, if any, of the excluded portions of Burditt's deposition will be had in a later section of this opinion in connection with the substantive effect, if any, of the testimony of William Burditt on separate record.

### III. The Right to Cross-Examine.

The next issue which must be considered is the matter of the court's ruling on the right of the plaintiff to cross-examine Burditt as an adverse party. As already noted, the use of Burditt's deposition, under the circumstances as they existed in this case, did not make Burditt the witness of the plaintiff. This being so, we need not decide in this appeal whether use of an adverse party's deposition under Rule 302.4(3), making the deponent the witness of the party offering the deposition, would or would not affect the right of such party to call his adversary for cross-examination under the statute late in the trial.

In the instant case, the court was in error in ruling that the plaintiff was precluded from cross-

examining Burditt under the statute. Even the
existence of this second error, however, does not
require reversal. It must again be determined
whether the error was reversibly prejudicial. A
separate record, not in the presence of the jury,
was made, in which the plaintiff was permitted to
pursue the cross-examination of Burditt as fully as
he wished. We must look to the separate record
then, to determine whether the exclusion of any-
thing elicited therein constituted reversible error.
If not, then the trial court's denial of plaintiff's
right to cross-examine Burditt was of no moment.
A detailed discussion of this follows.

### IV. THE SUBSTANTIVE VALUE OF IMPEACH-MENT TESTIMONY.

Was it reversible error for the trial judge to ex-
clude from the jury's consideration as substantive
evidence the two prior inconsistent statements made
by defendant Burditt as those statements were in-
corporated in the excluded portions of Burditt's
deposition and in the excluded separate record of
Burditt's testimony on the stand?

For the purpose of this discussion the excluded
portion of the deposition and the excluded separate
record of Burditt's testimony from the witness stand
can be considered together. The questions asked
and the answers given in both excluded portions are
substantially the same. The net effect of both ex-
cluded materials is the same. On both occasions
Burditt was interrogated regarding these prior in-
consistent statements. On both occasions Burditt
admitted having made the prior inconsistent state-
ments, but on neither occasion did he adopt the prior
inconsistent statements as true.

The status of the law regarding the admissibility of prior inconsistent statements is relatively settled. Such statements are generally admissible for impeachment purposes and are also admissible when they constitute an admission by a party opponent. The effect of such prior inconsistent statements when admitted in evidence is not so clear in the law, and in many cases it becomes important to determine whether the prior inconsistent statement is in fact substantive evidence or whether it is admissible merely to impeach. In his handbook on the law of evidence, Professor Charles T. McCormick states the problem as follows:

"When a witness has changed sides and altered his story or forgets or claims to forget some fact, and his previous statement is received for impeachment purposes, what effect shall be given to the statement as evidence? Under the generally accepted doctrine the statement is not usable as substantive evidence of the facts stated. The adversary if he so requests is entitled to an instruction to that effect, and, more important, if the only evidence of some essential fact is such a previous statement, the party's case fails.

"Only two escapes from the lethal effect of this doctrine, where the sole witness to a vital fact has turned coat, are revealed by the cases. The first is the rule that when the hostile witness is an adverse party to the present action, his former inconsistent statement has two faces. As an impeaching statement it would not be substantive evidence, but as the admission of a party opponent it comes in under an exception to the rule excluding hearsay and as such is evidence of its truth." McCormick, Evidence, Ch 5, § 39, pp 73, 74.

The second escape from the doctrine as described by Professor McCormick is the case wherein the witness adopts his prior statement as true, making

his prior statement and his present testimony one and the same.

Before we can consider the effect of the two prior inconsistent statements when offered for the purpose of impeaching Burditt, we must first grapple with the problem of whether the two prior inconsistent statements represented admissions of a party opponent, within the rule holding such admissions to be substantive evidence which can be considered by the jury. The problem here is that the admissions of one defendant are not admissible in evidence against a codefendant.[10] Thus, even if Burditt's prior inconsistent statements were admissions, a matter we need not decide, and thus admissible as substantive evidence against Burditt, they were totally inadmissible as to Roby, and where the appeal is taken only against Roby, the plaintiff cannot be said to have been harmed because the extrajudicial statements of Burditt were not received in evidence against Roby.

In passing, it should be noted that there has been some confusion in earlier cases in this Court on this question. The following statement appears in the case of *Rosenberg* v. *Mageda,* 251 Mich 696, at page 699:

"The court charged the jury they might consider the statements made by *plaintiff* in her signed statement as bearing upon the claim she made at the trial. The statements made by a witness out of court, in conflict with her testimony, could be considered as bearing upon her credibility, but not as substantive evidence in the case. *Eno* v. *Allen,* 113 Mich 399; *Hutchins* v. *Murphy,* 146 Mich 621. To instruct the jury they could so consider such testimony was error." (Emphasis supplied.)

---

[10] *Gibbard* v. *Cursan* (1923), 225 Mich 311.

The quoted statement from the *Rosenberg Case* clearly indicates the confusion which has beset our Court in the past. The Court was talking about a statement made by the *plaintiff*, and the rule applied by the Court is the general rule only when the witness is *not a party* to the suit.[11]

The recent case of *Schratt* v. *Fila,* 371 Mich 238, involved a situation very similar to the present case. There, the Court was dealing with the effect of a prior inconsistent statement by one of the defendants where the appeal was taken by another defendant. In the *Schratt Case,* this Court concluded that Fila in his interrogation had finally admitted the truth of his prior inconsistent statement. And our Court then said, quoting from *Perry* v. *F. Byrd, Inc.* (1937), 280 Mich 580, 582, that,

"Notwithstanding the fact that a written statement is offered solely for impeachment purposes, so much thereof as a witness at the time adopts by admission of the truth thereof becomes substantive evidence."

In its opinion in the *Schratt Case* the Court goes to some length to show that Fila adopted the prior inconsistent statements as true, thus bringing the case within the rule of *Perry* v. *F. Byrd, Inc.,* the second escape route described by McCormick. The Court apparently regarded this fact as controlling. The Court recognized that if Fila adopted the prior inconsistent statements as true, they would constitute substantive evidence against the defendant Ziegler. But if Fila had not adopted the prior inconsistent statements as true, the Court apparently believed that they would not amount to substantive evidence against the defendant Ziegler, the only

---

[11] See *Tisman* v. *School-District,* 90 Mich 510, an 1892 case; *McClellan* v. *Fort Wayne & B. I. R. Co.,* (1895), 105 Mich 101; and *Perry* v. *F. Byrd, Inc.* (1937), 280 Mich 580.

appellant. The Court either did not consider the question of whether the prior inconsistent statements were admissible as substantive evidence because they were admissions of a party, or else the Court assumed that because these were Fila's admissions, they were inadmissible as to the codefendant Ziegler; and in order to determine whether they had substantive evidentiary value as against Ziegler they would have to be tested by the rules governing prior inconsistent statements by persons who are not parties to the record. It is believed that the approach taken in the *Schratt Case* was the proper one, and that the substantive effect of the prior inconsistent statements of a codefendant who is not a party to the appeal should be governed by the rules having to do with the prior inconsistent statements of a witness who is not a party to the case.

If the extrajudicial statements of Burditt were inadmissible against Roby as admissions of Burditt, what was their evidentiary effect when offered for impeachment purposes? As has already been indicated, the general rule followed in this State for many years is that evidence of prior inconsistent statements when offered for impeachment purposes does not constitute substantive evidence unless the truth of the prior inconsistent statements is admitted when the witness is confronted with them on the stand.[12] This rule has been called the orthodox view and is founded on the reason that such statements are hearsay, that their value rests on the credibility of the declarant who was not under oath and not subject to cross-examination when the statement was made. The rule is one of general acceptance. Nevertheless, there has been some criticism of the rule.[13] Judge Learned Hand in his

---

[12] *Perry* v. *F. Byrd, Inc., supra.*
[13] *Pulitzer* v. *Chapman* (1935), 337 Mo 298 (85 SW2d 400); *State* v. *Jolly* (1941), 112 Mont 352 (116 P2d 686).

opinion in *Di Carlo* v. *United States* (CA 2, 1925), 6 F2d 364, 368, says:

" 'The possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand is indeed real, but we find no difficulty in it. If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are nonetheless deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court.' "

Mr. Justice Otis Smith, writing for the Court in the *Schratt Case,* states at page 245, as follows:

"We agree with the view stated in McCormick on Evidence, § 39, p 75:

" 'If the prior statement of the witness is contradictory of his present story on the stand, the opportunity for testing the veracity of the 2 stories by the 2 parties through cross-examination and re-examination is ideal. Too often the cross-examiner of a dubious witness is faced by a smooth, blank wall. The witness has been able throughout to present a narrative which may be false, yet is consistent with itself and offers no foothold for the climber who would look beyond. But the witness who has told one story aforetime and another today has opened the gates to all the vistas of truth which the common-law practice of cross-examination and re-examination was invented to explore. It will go hard, but the 2 questioners will lay bare the sources of the change of face, in forgetfulness, carelessness, pity, terror or greed, and thus reveal which is the true story and which the false. *It is hard to escape the view that evidence of a previous inconsistent statement, when the declarant is on the stand to explain it if he can, has in high degree the safeguards of examined testimony.*' "

This quotation from Professor McCormick represents an excerpt from a lengthy and most interesting discussion. The substance of the balance of Professor McCormick's remarks is that he believes that the rule which prohibits the use of impeachment testimony as substantive evidence is not a reasonable one. He is not talking about prior inconsistent statements which are adopted by the witness as he concedes that these are already generally held to be substantive evidence. He points out that the prior inconsistent statement because made closer in time to the fact is based upon a fresher memory and for that reason may even be more reliable than the testimony of the witness in court. He finds support in the English Evidence Act of 1938, and also in the Uniform Rules of Evidence; "Rule 63, subd 1, admits as an exception to the hearsay rule 'a statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness.' "[14]

In view of such attacks, some re-examination of the settled rule in Michigan is in order. Prior inconsistent statements used for impeachment purposes are not, strictly speaking, exceptions to the hearsay rule. The hearsay rule excludes from evidence extrajudicial statements which are offered for the purpose of proving the truth of the thing said. Prior inconsistent statements offered for impeachment purposes are not offered for the purpose of proving the truth of the thing said. They are offered merely to show that the statement was made. The mere fact of the making of a prior inconsistent

---

[14] 9A Uniform Laws Annotated, p 635.—REPORTER.

statement has value as bearing on the credibility of the witness.

Those who argue for the use of such statements as substantive evidence, that is, as tending to prove the truth of the thing said, reason in this fashion: since the principal reason for the hearsay rule lies in the absence of an opportunity to cross-examine the declarant on his statement, the reason for the rule falls whenever the declarant is available for cross-examination. Under this line of reasoning, prior consistent statements, as well as prior inconsistent statements, would be admissible substantive evidence whenever the declarant was on the witness stand.

The difficulty with this argument is that it does not recognize the real nature of cross-examination. Cross-examination presupposes a witness who affirms a thing being examined by a lawyer who would have him deny it, or a witness who denies a thing being examined by a lawyer who would have him affirm it. Cross-examination is in its essence an adversary proceeding. The extent to which the cross-examiner is able to shake the witness, or induce him to equivocate is the very measure of the cross-examiner's success.

Bearing in mind that when the witness adopts the prior statement his prior statement becomes his present testimony, and becomes admissible substantive evidence by settled law, it is readily apparent that the present discussion only relates to those cases where the witness does not adopt his prior statement as true. If he refuses to adopt his prior statement as true, there can be no adversary cross-examination upon it. If he refuses to affirm, no question can be put to him which would shake his own confidence in his affirmation.

It is interesting to note that Uniform Rule 63, subd 1, silently concedes its own frailty when it

makes reference to the witness being available for cross-examination "with respect to" the prior statement and its subject matter, rather than cross-examination "upon" the prior statement. If a prior inconsistent statement is received as substantive evidence though not adopted as true, it is thereby given a special indestructible status far superior to direct sworn testimony from the witness stand. One who would cross-examine *upon* such a statement is denied even the basic technique of asking the witness to repeat the statement.

The would-be cross-examiner is not only denied the right to be the declarant's adversary, he is left with no choice but to become the witness' friend, protector and savior. Though he may be permitted to ask questions in the form of cross-examination, the substance of his effort will be re-direct examination and rehabilitation. The reason is simple. The witness cannot recant! Every cross-examiner tries to bring the witness to the point where he changes his story—literally eats his words—in the presence of the jury.

A statement made from the witness stand is not beyond total recall by the witness. Stale friendly cross-examination "with respect to" a prior extrajudicial statement is no substitute for timely, adversary cross-examination "upon" a statement. The importance of this distinction is clearly seen when we analyze the case before us. The statement Burditt gave to the police officer, and which plaintiff would have the jury consider as substantive evidence, was as follows:

"*Q*. William you said earlier that a woman was on your side when you hit, so would you say that the man in the car was driving?

"*A*. He had to have been, there was a man driving."

Trial lawyers are keenly aware of the vulnerability of "hadda" witnesses and "musta" witnesses. When a witness says that the driver *had to have been* speeding, or *must have* swerved this way or that way, his very choice of verbs betrays that he is stating his conclusions rather than his observations. For the purpose of demonstrating the difference between timely and stale cross-examination, let us suppose that a cross-examiner had been present at the time Burditt made his statement to the police officer. And let us suppose, for the sake of discussion, that the following had taken place:

*Q.* William, you say that the man had to have been driving, is that right?
*A.* Yes.

*Q.* Did you see the man behind the wheel before the accident?
*A.* No.

*Q.* Did you see the man behind the wheel after the accident?
*A.* No.

*Q.* Did you ever see the man in the car?
*A.* No.

*Q.* Why then, do you say that the man had to have been driving?
*A.* Because when I first looked over there after the accident, the woman was lying out of the door on the passenger's side, and if she was on the passenger's side, she must have been the passenger and the man had to have been the driver.

*Q.* Isn't it possible that the man was thrown out of the car from the passenger's side and the woman was thrown across the front seat from the driver's seat?
*A.* Yes, that's possible.

*Q. Do you still say that the man had to have been driving?*
*A. No, I guess not.*

Now let us see whether the stale cross-examination of Burditt *"with respect to"* his statement, as envisioned by the Uniform Rule and advocated by Professor McCormick, would have the same effect:

*Q.* William, you say that the man had to have been driving, is that right?

*A.* No, I'm not saying that.

*Q.* Well that's what you told the police officer, isn't it?

*A.* Yes.

*Q.* Did you see the man behind the wheel before the accident?

*A.* No.

*Q.* Did you see the man behind the wheel after the accident?

*A.* No.

*Q.* Did you ever see the man in the car?

*A.* No.

*Q.* Why then did you tell the police officer that the man had to have been driving?

*A.* Because when I first looked over there after the accident, the woman was lying out of the door on the passenger's side, and if she was on the passenger's side, she must have been the passenger and the man had to have been the driver.

*Q.* Isn't it possible that the man was thrown out of the car from the passenger's side and the woman was thrown across the front seat from the driver's side?

*A.* Yes, that's possible.

At this point, the cross-examiner is stymied. The crucial question which would give the witness a chance to change his story, *"Do you still say that the man had to have been driving?"* is meaningless. The witness has already testified that he is not still saying that the man had to have been driving. Instead of a plunge to the jugular, the examiner will have to be satisfied with applying a bandage. It would sound something like this:

*Q.* And isn't this the reason why the story you are telling us today is different from the story you told the police officer? ·  ·

or,

*Q.* And isn't it true that if you had thought of that possibility at the time, you never would have told the police officer that the man had to have been driving the car?

By these hypothetical examples we have tried to show the windmill-fighting nature of stale cross-examination with respect to the prior statement. No matter how deadly the thrust of the cross-examiner, the ghost of the prior statement stands. His questions will always sound like attempts to permit the witness to explain *why* he changed his story before coming to court, with the jury being left to infer that he might have been induced to change his story in the intervening months or years, for some unrevealed and sinister reason.

When a cross-examiner on timely cross-examination *succeeds* in getting the witness to change his story, the integrity of the recantation is apparent, and *his original, recanted version no longer stands as substantive evidence.* If the only evidence of an essential fact in a lawsuit were a statement made from the witness stand which the witness himself completely recanted and repudiated before he left the witness stand, no one would seriously urge that a jury question had been made out.

Scholarly legal writings are useful and necessary. When they challenge the established rules, the courts have an obligation to re-examine those rules and measure the theoretical criticism against the hard facts of a living system of justice. This opinion has been longer than we would have liked, but there seemed to be a need.

To summarize then:

1. The deposition of Burditt was admissible in evidence even though Burditt was present in the courtroom.

2. The use of Burditt's deposition did not make him the plaintiff's witness.

3. The exclusion of that portion of the deposition containing the prior inconsistent statements of Burditt offered for impeachment purposes was error, as to Burditt.

4. The refusal to permit plaintiff to cross-examine Burditt upon his prior inconsistent statements was error, as to Burditt.

5. The prior inconsistent statements of Burditt, offered for impeachment purposes, did not constitute admissible substantive evidence as to the co-defendant Roby.

6. Where no appeal has been taken against Burditt, the errors as to him did not constitute reversible, prejudicial error in this appeal taken against Roby only.

The judgments of the trial court and the Court of Appeals are affirmed, with costs to the appellee.

DETHMERS, C. J., and SOURIS, and O'HARA, JJ., concurred with BRENNAN, J.

KELLY, J., concurred in result.

BLACK, J. (*dissenting*). The trial judge erred reversibly—twice. He denied plaintiff's right, assured by GCR 1963, 302.4 (2), to read in evidence the critical portion of defendant Burditt's deposition.[1] Then he denied plaintiff's separate right to call defendant Burditt to the stand for cross-exam-

---

[1] See appendix hereto for unbroken transcript of defendant Burditt's deposition.

ination; a right which was assured anew by the re-
enactment—effective January 1, 1963; RJA, PA
1961, No 236, § 2161[2]—of the act of 1909 (CL 1915,
§ 12554); also by presently quoted GCR 1963, 507.4.
Division 2 erred in turn when it upheld these rul-
ings (2 Mich App 557).

*First:* GCR 1963, 302.4 provides:

".4 Use of Depositions. At the trial or upon the
hearing of a motion or an interlocutory proceeding,
any part or all of a deposition, so far as admissible
under the rules of evidence, may be used against
any party who was present or represented at the
taking of the deposition or who had due notice
thereof, in accordance with any 1 of the following
provisions:    *    *    *

"(2) The deposition of a party    *    *    *    may
be used by an adverse party for any purpose."

Our waxing and now multiloquent difficulty with
this unambiguous and simply phrased rule of court
recalls Justice Holmes' pungent remark (*Northern
Securities Company* v. *United States,* 193 US 197,
401 [24 S Ct 436, 468, 48 L ed 679, 726]): "What
we have to do in this case is to find the meaning
of some not very difficult words." They are quoted
above.

If Burditt was "an adverse party" within the
quoted rule, and I hold that he was,[3] then the only
restriction upon the "use" of Burditt's deposition
as sought below was the test of admissibility "under
the rules of evidence." The rule as quoted is un-

---

[2] CLS 1961, § 600.2161 (Stat Ann 1962 Rev § 27A.2161).—Re-
PORTER.

[3] Our statute (cited now as RJA 2161) has for 58 consecutive years
provided that any party of record may be called, as a matter of
right, for cross-examination by any other party of record where
the record shows that there is an issue between them to be tried.
That is the essence of it. The statute since January 1, 1963, has
been fitted, not only to Rule 302.4 but also to GCR 1963, 507.4
(quoted *post*).

restrictive and bids no ban upon "use" of an ad-
versary's deposition because he is present in court.
In such regard the rule nullifies the former prac-
tice, exemplified most recently in *Thelen* v. *Mutual
Benefit Health & Accident Association,* 304 Mich 17.
So our inquiry is refined to question whether, *tested
by objection of counsel* (of which there is none in
the record save that he "would like to take a recess
to determine if there are any inadmissible mat-
ters"), any part or portion of the deposition was
inadmissible.

I look upon the deposition as consisting entirely
of legitimate cross-examination of an adverse party,
designed partly to draw out admissions against *that
party's interest* and partly to elicit—as it did— *sub-
stantive proof which was admissible as against both
defendants.* Plaintiff was entitled under the quoted
rule to have the deposition as offered, not hacked
out parts of it, read before the jury as a part of
his case in chief.[4]

And what was that substantive proof? No mat-
ter how uncertain and evasive its nature, the deposi-
tion as offered tended under *Schratt* (cited and
quoted *post*) to establish that plaintiff's decedent
was seated as a passenger in the right front of the
southbound car; that she consequently was not the
driver thereof. That was an essential fact which,
along with actionable negligence as charged against
both defendants, plaintiff was required to establish
preponderantly in order that he might recover
against both defendants. The sad result of the trial
judge's dual error aforesaid was that the jury was
denied the value, not only of hearing read the impor-
tant part of Burditt's deposition, but also of see-
ing and hearing Burditt—an interested witness—
for appraisal of his credibility. It is a regrettable

---

[4] The only exception would be the short and isolated reference to
"Mr. Moody's insurance man." See appendix, *post* at 144.

fact that Burditt, an eyewitness who formally admitted in his pleading that defendant Roby (not the decedent) was driving the southbound car, was not called to the stand by the trial judge. (See GCR 1963, 506.1), all counsel after such dual error having been unwilling—understandably—to vouch for or call him.

I perceive no reason for any current or early disturbance of the rules set forth in *Schratt* v. *Fila,* 371 Mich 238, under heading *"Defendant's prior statement as substantive evidence."* (p 241), or for nit picking that precedentially helpful decision into a state of nervous uncertainty where none exists now. Plaintiff rightfully cites the decision in support of his contention that "To exclude the statements as substantive evidence is to block from the court a valuable piece of evidence without good reason."

*Schratt* settled something definitely under the heading quoted above. I indorsed the opinion, along with the others, feeling that we had laid down this good and presently applicable rule (pp 245, 246):

"In the instant case, certainly Fila did more than identify the statement. It is also equally clear from the quoted testimony that he did less than deny the contents of the statement. It would seem therefore that under the rule in the *Perry Case,*[5] use of the statement in this case cannot be confined to impeachment purposes. Even though Fila admits the truth of his statement but then denies its effect, to exclude the statement as substantive evidence is to block from the court a valuable piece of evidence without good reason. We agree with the view stated in McCormick on Evidence, § 39, p 75: (Here follows the complete quotation of McCormick which Justice BRENNAN has set forth and dissected, *ante* at 122).

---

[5] *Perry* v. *F. Byrd, Inc.* (1937), 280 Mich 580.—REPORTER.

"We conclude, therefore, that the prior written statement of defendant Fila was admissible as substantive evidence. Confusing and self-contradictory as Fila's testimony was, it was properly a question for the jury."

There is nothing new or novel about the foregoing procedural observations. They portray only what was lectured and discussed in detail during Michigan's ICLE meetings of 1963–1965; indeed only what "some not very difficult words" were meant to convey. Judge Gilmore, one of the ICLE lecturers on this phase of practice, has recorded the following comment, immediately below quotation of Rule 302.4 ("E. [§ 13.204] Use of Depositions"):

"In short, at the trial or upon hearing of a motion, any part or all of a deposition, insofar as admissible, may be used against any party who was present or represented at the taking of the deposition or had notice thereof under any one of the following conditions:

"(1) impeachment of the testimony of deponent as witness;

"(2) for any purpose if the deposition is one of an adverse party or the agent of an adverse party;

*　　*　　*

"This means that by calling the adverse party it is possible to open the door to allow the opponent to get into evidence through cross-examination of his own witness things he probably could not get in by direct examination. A deposition, carefully taken prior to trial and used against the party in trial, can serve the same purpose as calling the adverse party for cross-examination without subjecting the attorney to many of its possible hazards.

"It is true that some trial judges frown upon the use of a deposition of a party for purposes other than impeachment, if the party is present, feeling that the party being present he should be put on the stand if his testimony is sought. However, the

rule clearly permits the use of the deposition and the trial court, although not happy with the practice, cannot prevent it. Therefore it should be considered in proper cases." 1 Michigan Civil Procedure Before Trial (ICLE), pp 635–637.

That portion of defendant Burditt's deposition which the trial judge eliminated from jury consideration appears in connected italics in the appendix. Such elimination was prejudicial error because the eliminated portion includes admissible substantive testimony given by "an adverse party." That party was an eyewitness of crucial events bearing upon the issue of liability of both defendants. That such eliminated portion included certain admissions of defendant Burditt formed no basis for the ruling below. In the circumstances disclosed here a need for cautionary jury instruction only (as to effect of admissions made by one only of two defendants) arose in favor of defendant Roby. He had no right to demand more.

*Second:* After defendant Burditt's deposition had been thus excised and read, plaintiff's counsel called defendant Burditt to the stand with announcement of intent to cross-examine him as an adverse party. Upholding objection of counsel for *both* defendants, the trial judge ruled:

*"The Court.* Let the record show that yesterday during the trial the defendant, William Burditt, was present in court. That despite this fact the attorney for the plaintiff chose not to call Mr. Burditt to the stand, either as his own witness or as an adverse party under the statute. Instead he chose to place before the jury the testimony of William Burditt taken in a deposition on September 15, 1964. At the time he did this he did not announce this testimony was taken or introduced as cross-examination. Prior to the introduction of the deposition or the reading of the deposition into evidence, as

a result of a conference between counsel in chambers, certain portions of the deposition were stricken. In the main, those portions which were stricken were those where an attempt was made during the course of the deposition to impeach Mr. Burditt's testimony because of certain alleged prior statements made by him. It was the ruling of the court yesterday that no proper foundation had been laid in the course of the deposition which would make the prior statements admissible for impeachment purposes. I think that brings us up to date, until we reached the point now where Mr. Abram or Mr. Dean attempts to call Mr. Burditt, who is again present in court, for cross-examination. I see no inconsistency between the rule and the statute. The rule permits the deposition to be used for any purpose which would be either for cross-examination or a method by which the witness' testimony might be introduced as the plaintiff's own witness. The statute permits the calling of the opposite party for cross-examination. I see no inconsistency between the two, but I do see an inconsistency where an attempt is made to do both; on one day, call him as your own witness, and the next day call him for cross-examination. Yesterday, having discovered, at least insofar as the ruling of the court was concerned, that there were defects in the deposition, insofar as using the prior statements for impeachment purposes, because no foundation had been laid, the plaintiff now seeks to call the same witness personally to the stand, I suppose, with the attempt to lay a proper foundation, whereby the prior statements might become useful for impeachment purposes. I am unable to see how he can do both. Yesterday he made him his own witness; today he now wants to cross-examine him. I think I shall sustain the objection made at this time as to calling him under the statute for cross-examination after introducing his testimony as his own witness through the deposition."

I hold such denial of right of statutory cross-examination to be reversible error. Neither the former statute nor the present enactment have carried any words which thus restrict the right which section 2161 of RJA and coordinate GCR 1963, 507.4[6] unreservedly provide. When the witness called is an "opposite party," and due announcement of purpose is made, the accorded right of cross-examination is "the same as if he were called by the opposite party." As recently redeclared in *Petrosky* v. *Dziurman,* 367 Mich 539, 548, "Defendant's testimony so developed stood [stands] .in no different position in the case than it would had it been called out by cross-examination after he had taken the stand in his own behalf." ·

The continued purpose and employed utility of the current statute and court rule appear pointedly in *Aphoresmenos* v. *McIntosh,* 189 Mich 680; *City of Detroit* v. *Porath,* 271 Mich 42; *Cohn* v. *Mary Lee Candies, Inc.,* 293 Mich 157; and, most recently, in the comment by Honigman & Hawkins (2 Michigan Court Rules Annotated, pp 394, 395):

"6. Cross-examination of Opposite Party or Agent.
"Subrule 507.4 provides that a party may call as witnesses any other parties, or their agents, and that these witnesses may be cross-examined by the party calling them and the testimony given by such persons may be contradicted and impeached. This rule is based upon a former statutory provision, CL 1948, § 617.66 (Stat Ann § 27.915), which has now been brought forward as RJA § 2161. The rule involves no change in former practice. Its purpose is to permit calling an opposite party as a witness, in order to get at the truth of facts within

---

[6] ".4 Parties as Witnesses. Parties or persons who were their employees or agents at the time of the happening of the transaction out of which the action arose, when called as witnesses by the opposite party, may be cross-examined by the party calling them and the testimony given by such persons may be contradicted and impeached."

his knowledge without the limitations as to contra-
dictions and impeachment normally applicable to
one's own witnesses, and without the risks of having
to vouch for his testimony."

The foregoing comment by Honigman & Hawkins
was doubtless taken, in part, from *Waller* v. *Sloan,*
225 Mich 600, 603–605:

"If defendant Sloan's testimony proved plaintiff's
case in what way has defendant been harmed? The
purpose of the statute is to level former technical
rules and to get at the facts in issue. Evidently
the cross-examination was no 'fishing expedition' for
the complaint is that it proved plaintiff's case. It
did.

"What does the statute mean in giving 'the right
to cross-examine such witness the same as if he
were called by the opposite party.' The so-called
'orthodox rule' extending the right of cross-exam-
ination to all points material to issues involved,
and not limiting it to matters brought out on direct
examination, has ever prevailed in this State. *Peo-
ple* v. *Barker,* 60 Mich 277 (1 Am St Rep 501), and
cases there cited. The legislature was aware of
this rule and employed the term 'cross-examine' ad-
visedly. It must be remembered in considering
cases upon the right to cross-examine that the Mich-
igan rule does not prevail in a majority of the
States. * * *

"Plaintiff had a right, if he could, to make out
his case by the testimony of defendant. If the stat-
ute admits of abuse in the nature of a search of a
defendant's side of a case before a plaintiff enters
upon proof of his case the legislature can provide
a remedy. It is, however, no abuse of the statutory
leave, and does not at all offend justice, for a plain-
tiff to 'make out his case from the cross-examination
of defendant.' "

Did the fact that plaintiff unsuccessfully sought
to read in evidence *all* of defendant Burditt's depo-

sition, affect his subsequently claimed right to call defendant Burditt to the stand for cross-examination? The evenhanded answer is that the privilege 302.4 (2) provides, and the privilege section 2161 and Rule 507.4 provide, are separate and independent. At election of a party otherwise entitled to employ the two, that party may utilize one, or the other, or both.

A final point requires discussion. As previously noted defendant Burditt moved separately for a directed verdict. The trial judge ruled that plaintiff had not made out a submissible case of actionable negligence as against Burditt. Burditt's said motion was granted. A separate judgment for Burditt entered. As for defendant Roby, the usual questions were submitted to the jury, followed by verdict for Roby and entry of a separate judgment in his favor.

Plaintiff duly claimed an appeal from denial of his motion for new trial as against Roby. He failed to appeal from the judgment for Burditt. The latter judgment now being final, question arose at conference whether the points dealt with above, that is, right of plaintiff to read in evidence Burditt's deposition and right of plaintiff to call him to the stand for cross-examination, had not become moot and hence nonreversible; the point being that, since Burditt no longer is an "opposite party," plaintiff now cannot utilize Burditt's deposition as before and also may not call Burditt other than as his own witness.

The undersigned, having found that prejudicial errors were committed against plaintiff during the trial, concludes that plaintiff is entitled to reversal for new trial as against defendant Roby. The errors thus found were committed largely on request of Roby's counsel. Tainting as they did the verdict

of the jury which absolved Roby, they were prejudicial.

It is not for us to say that plaintiff on retrial cannot make out a submissible case as against Roby, or that any case he may submit as against Roby will fail for want of availability to him of the mentioned statute and rules. This follows particularly in view of the fact that plaintiff's counsel, even though disabled from employment of the procedures upheld by this opinion, may yet call Burditt to the stand for direct examination concerning identity of the driver of the Kingsley car[7] and for invocation if necessary of the trial judge's discretion to permit confrontation, of Burditt, with his deposed and recorded statements regarding identity of the driver of the Kingsley car. See *Bresch* v. *Wolf,* 243 Mich 638; also *Higdon* v. *Kelley,* 339 Mich 209, 217–219, where the practice is fully discussed with citation and quotation of applicable authority. We note in passing that *Bresch* and *Higdon* were civil actions for damages, as is this case of Ruhala.

The respective judgments of the circuit court and Court of Appeals—entered for Roby—should be reversed with remand for retrial. Plaintiff should have costs of all three courts.

T. M. KAVANAGH and ADAMS, JJ., concurred with BLACK, J.

---

[7] See *Welty Estate* v. *Wolf Estate,* 345 Mich 408, 411, for cases concerned with identity of the driver of a motor vehicle, there being no direct proof of identity and, in one case, denial by one accused of hitting and running that he was the driver of the hit-run car.

## APPENDIX

Pertinent text of deposition of defendant William Burditt; parts italicized were ordered *not* read to the jury.

*"Examination by Mr. Abram:*   \*   \*   \*

"Q. You say that you saw this vehicle, what kind of a car was it?

"A. Well, I didn't know at the time, but it is a '57 Chevrolet, I found that out afterwards.

"Q. All right, and as you saw the rear end swing west, you said, now, you said you were 150 feet away from it at that time?

"A. I would say approximately, something like that, I don't know.

"Q. How many lanes is there on Dixie Highway?

"A. Four lanes.

"Q. And that would be two lanes north and two south?

"A. Two lanes north and two south.

"Q. Is there a shoulder also?

"A. Oh, yeah, there is gravel, not paved like some of them, it is gravel.

"Q. Is there room for a car on that?

"A. No, not without going in the ditch.

"Q. All right, and what speed were you going when you first saw this car swing out?

"A. Not over 30.

"Q. Then you proceeded, as you told us, and about how far were you from this other vehicle which you later found out to be the Kingsley car when the two vehicles came into collision?

"A. How far what?

"Q. How far were you away, — will you read the question?

(*Whereupon the question was read by the reporter.*)

"Mr. Abram. Strike the question.

"*Q.* (*By Mr. Abram.*)   How far were you from the Kingsley vehicle when you realized that the Kingsley vehicle was not going to swing around, as you described to us?

"*A.* Oh —

"*Mr. Ambrose.* Just give the best you can, in terms of distance estimates. If you can't, say you can't, but if you can, give it the best you can.

"*A.* Maybe 40, 50 feet.

"*Q.* (*By Mr. Abram.*)   And at that point did you then apply your brakes?

"*A.* Yeah, I couldn't do nothing. If I had known that was going to happen I could have gone ahead and gone in the ditch, but I didn't even know he was going to come across the center line. Lots of times you will see them skidding and they will straighten out and go on.

"*Q.* At the time you were 40 or 50 feet away, that was the first time you had applied your brakes, is that right?

"*A.* Yeah.

"*Q.* At the time you were 40 or 50 feet away and going 30 miles an hour, you slowed down at that point, didn't you?

"*A.* Yes.

"*Q.* Would you tell us how slow a speed you were going?

"*A.* That was an old '54, when you didn't give her the gas, you ain't going very fast; I would say maybe 15, 20 miles an hour is all I was moving at the time of the impact. Of course, I have no way of proving it, I don't know.

"*Q.* What part of your car collided with the other car?

"*A.* The front end, the whole front end.

"*Q.* And what part of the Kingsley car was injured?

"*A.* That would be the back door, from the back door to the rear.

"*Q.* Did you see the passengers in the car before you hit?

"*A.* I noticed them when they first started to swing around, I could see through the car.

"*Q.* Could you tell me the sex of the passengers in the car?

"*A.* Pardon?

"*Q.* The sex of the passengers in the car?

"*A.* It looked to me like a man a woman.

"*Q.* And which side was the woman sitting on?

"*A.* I have a picture in my mind that when that car first started to come around, like that, that this woman was behind the wheel, that is just the impression I got, and I still have that picture in my mind. It seems when we hit, she was over to my side of the car, what I mean, not my side, I mean the side that I hit on the car.

"*Q.* Then you saw the woman in the car just before you hit?

"*A.* I don't know what I saw then, I can't tell you. (*Plaintiff's Deposition Exhibit No. 1 marked for identification.*)

"*Q.* (By Mr. Abram.) *Mr. Burditt, do you remember a police officer coming to your home?*

"A. *Yeah.*

"*Q. And him asking you some questions right on the day of the accident?*

"A. *Yeah.*

"*Q. Now, was your memory fresher of the accident then than it is now?*

"A. *I don't know, I was pretty sore. My face, this side of my face was all banged up, and my chest and my leg.*

"*Q. At that time do you remember being asked this question, 'William, did you see the passengers in the car before you hit,' and you replied, 'Yes, Sir.' Do you remember that question and answer?*

"A. *Yeah.*

"*Q. The next question: 'Could you tell me the sex of the passengers and where they were sitting in the car?'*

"'A. *'A male and female; the woman was sitting on the passenger's side when we hit.*

"Q. *'Then you saw this woman in the car just before you hit?*

"A. *'Yeah.*

"Q. *'William, you said earlier that a woman was on your side when you hit, so you would say that the man in the car was driving?*

"A. *'He had to have been, there was a man driving.*

"Q. *'William, has anyone else contacted you with reference to any statements before I came?*

"A. *'No.*

"Q. *'Have any promises been made to you in regards to the taking of this statement?*

"A. *'No.*

"Q. *'Is this the truth to the best of your knowledge?*

"A. *'Yes, sir.'*

"Do you remember those questions and those answers?

"A. *Yes.*

"Mr. Ambrose. *Could we have the police officer identified?*

"Mr. Abram. *This whole exhibit is marked, but it is Gerald H-o-u-g-h.*

"Mr. Ambrose. *What police department is that?*

"Mr. Abram. *Michigan State Police.*

"Q. (By Mr. Abram.) *Do you remember those questions and those answers?*

"A. *Yes.*

"Q. *Were those questions true and correct?*

"A. *They must have been at the time.*

"Mr. Ambrose. *Wait a minute, I should have warned you that once in awhile I may want to interject and object to something; if so, you stop right then and let me finish my objection. I am not certain, Bob, that you phrased your questions the way, — maybe I misunderstood, you asked him if the questions were true and correct?*

"Mr. Abram. *I was next going to ask him if the answers that he gave were true and correct.*

"Mr. Ambrose. *I don't think he would have any way of knowing whether questions are true and correct.*

"Mr. Abram. *Your objection is noted.*

"Q. (By Mr. Abram.) *The answers and the questions that I just read, were they the questions and answers that were given to you that day and you replied to?*

"A. *As far as I know now they were.*

"Q. *Have you given a statement to any other person as to how this accident occurred?*

"A. *A man by the name of Moody.*

"Mr. Abram. *Off the record.*

*(Off the record discussion.)*

"Q. (By Mr. Abram.) *Now, go on and tell us what you said, you gave a statement to a man?*

"A. *It seems to me that this Mr. Moody was out and I talked to him.*

"Q. *All right, do you know why he came out there, did he identify himself?*

"A. *Well, I think, well this is —*

"Mr. Ambrose. *Go ahead.*

"The witness. *He was Mr. Moody's insurance man, he said he was.*

"Q. (By Mr. Abram.) *Mr. Moody's?*

"A. *Or Mr. Roby's.*

"Q. *He said he was representing Mr. Roby?*

"A. *Yes, James Roby.*

"Q. *Did you give a statement to anybody else?*

"A. *No.*

"Q. *Have you testified in any proceedings?*

"A. *Saginaw.*

"Q. *When was that?*

"A. *Gee, I don't know, it must be a couple months ago, — no, wait a minute, it must be about two months ago.*

"Q. *And that was in a court, a trial?*

"A. *Saginaw, yes, sir.*

"Q. *Are these the only statements you have ever given to anybody?*

"A. *Pardon?*

"Q. *Are these the only statements and only testimony you have ever given to anybody as to how this accident occurred?*

"A. *Yeah, — well, I talked to him today.*

"Q. *So you have given four statements, is that correct, one to your representative, one to a representative of Mr. Roby, one to the police, and you have testified in a court trial, is that right?*

"A. *Yeah, that would be four.*

"Q. *That would be the four statements you have given?*

"A. *Yeah.*

"Mr. Abram. *Mr. Ambrose, may I look at that statement?*

"Mr. Ambrose. *Yes.*

"Q. (By Mr. Abram.) *In this statement—*

"Mr. Ambrose. *I am going to object to proceeding until I let him read that, I think it is only fair to him to let him read it.*

"Mr. Abram. *All right.*

(*Plaintiff's Deposition Exhibit No. 2 marked for identification.*)

"Q. (By Mr. Abram.) *Mr. Burditt, you have had the opportunity just now to review a statement that you gave on December 9, 1963, to a Mr. Donald Cook?*

"A. *Yeah.*

"Q. *Now, that was how long after the accident?*

"A. *Two days.*

"Q. *On that occasion he asked you certain questions about how the accident happened?*

"A. *Yeah.*

"Q. *And you gave him certain answers, is that correct?*

"A. *Uh-huh.*

"Q. *After a series of questions you were asked, and I am showing you this, 'I see, do you know, was she knocked out of the car or anything,' and your*

*answer at that time was, 'She was laying half out of the car on the right-hand side, she was half out and half in.'*

"A. *Yeah.*

"Q. *Now, is that correct, to the best of your memory?*

"*A.* I didn't see anything, I was still by the ditch when the man with the wrecker came up, Hank Gray, I know him, and he took me and put me in the police car. That is when I saw Mrs. Kingsley laying there on the pavement. It looked to me, well, I saw it when they came with the ambulance, because they forced the door further, and her legs and this was laying up in the car. The rest of her was laying on the pavement. They had covered her up with a blanket, but I didn't see that until the garage man took me over and put me in a police car.

"Q. *The question I am asking you and the answer is correct?*

"A. *Yeah.*

"Q. *Now, the next question that was asked you: 'I see, do you know who was driving the other car,' and the answer, 'Well, I'll tell you the same as I told the State Police and his wife, the man was not driving the car.'*

"A. *The woman was not driving the car.*

"Q. *Excuse me, 'the woman was not driving the car,' is that correct?*

"A. *That's right.*

"Q. *Now, the next question is, 'The woman was not driving,' and the answer, 'Right, not driving the car.' Is that correct?*

"A. *Uh-huh.*

"Mr. Abram. *I have nothing further.*

"Mr. Des Jardins. *I don't think I have any questions.*

"Mr. Ambrose. *That's all.*

(Deposition concluded.)"