## NATIONAL LABOR RELATIONS BOARD v. UNIVERSAL CAMERA CORP.

No. 21395.

United States Court of Appeals
Second Circuit.

Argued June 14, 1951.

Decided July 13, 1951.

Before SWAN, Chief Judge, and FRANK and L. HAND, Circuit Judges.

Mozart G. Ratner, Washington, D. C., for the petitioner.

Frederick R. Livingston, New York City, for the respondent.

## L. HAND, Circuit Judge.

By a divided vote we decided this appeal last year upon the same record that is now before us,[1] holding that the Board's order should be "enforced." The Supreme Court vacated our order and remanded the cause to us for reconsideration in two particulars.[2] The first was that, athough the amendment of the old act was in terms limited to adding that courts of appeal should scrutinize the whole record on reviewing findings of the Board, its implications were more extended. The second was that in considering whether the Board's findings were adequately supported by the evidence we were not altogether to disregard the findings of its examiner. As to the first, the Court agreed that in the case at bar we had based our review upon the whole record, but it held that the amendment had been a resultant of prolonged discussion in both Houses; and, although in form it did no more than incorporate what had always been the better practice—our own included —it was intended to prescribe an attitude in courts of appeal less complaisant towards the Board's findings than had been proper before; not only were they to look to the record as a whole, but they were to be less ready to yield their personal judgment on the facts; at least less ready than many at times had been. Presumably that does not extend to those issues on which the Board's specialized experience equips it with major premises inaccessible to judges,[3] but as to matters of common knowledge we are to use a somewhat stiffer standard. Just where the Board's specialized experience ends it may no doubt be hard to say; but we are to find the boundary and beyond it to deem ourselves as competent as the Board to pass upon issues of fact. We hold that all the issues at bar are beyond the boundary and for that reason we cannot accept the Board's argument that we are not in as good a position as itself to decide what witnesses were more likely to be telling the truth in this labor dispute.

Upon the second issue we had said that we could find no practicable mesne between giving the findings of an examiner the immunity which a court must give to those of a master, and saying that, although the Board should no doubt treat them as having some evidentiary value, it was impossible for us to measure what that ought to be; and that therefore we would decide the appeal, as though there had been no findings. Although this went too far, again it is plain that the weight which we should insist that the Board should give them must be left at large; except that we must count them for something, and particularly when —as indeed we said at length in our first opinion—they were based on that part of the evidence which the printed words do not preserve. Often that is the most telling part, for on the issue of veracity the bearing and delivery of a witness will usually be the dominating factors, when the words alone leave any rational choice. Perhaps as good a way as any to state the change effected by the amendment is to say that we are not to be reluctant to insist that an examiner's findings on veracity must not be overruled without a very substantial preponderance in the testimony as recorded.

In the case at bar the examiner came to the conclusion that Chairman's discharge on January 24, 1944, was not because of his testimony two months before. He believed that Politzer had told Weintraub, a day or two after Weintraub's quarrel with Chairman at the end of December, that Chairman had said he was going to resign; and, although he did not believe that Chairman had in fact said so, he found that Politzer either thought he had, or told Weintraub that he had in the hope of smoothing over their quarrel. We see nothing improbable in this story, nor can we find any contradiction of it in Chairman's testimony that on January 11th Politzer asked him if he were going to resign. Indeed, if Politzer had got the impression that Chairman was

1. N. L. R. B. v. Universal Camera Corp., 2 Cir., 179 F.2d 749.

2. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456.

3. Phelps Dodge Corporation v. N. L. R. B., 313 U.S. 177, 197–199, 61 S.Ct. 845, 85 L.Ed. 1271.

going to resign, Politzer might very naturally have followed it with an inquiry which to Chairman appeared like opening up a new subject. Be that as it may, we are satisfied, as we were before, that there was enough to justify the conclusion that, when Weintraub complained that Chairman was undermining his influence in the factory, Politzer put him off, presumably in the hope that time might soften his animosity. Hence, even were the Board's argument more cogent than it is, we can no longer agree that it was free to overrule the examiner's conclusion that Weintraub's delay in complaining to Kende was because he had been waiting for Chairman to resign. Once this is accepted as true, it becomes incredible that Chairman's dismissal on January 24, 1944, was in fulfillment of any joint plan between Kende and Weintraub. In our first opinion we gave our reasons for thinking so; and, as we read the Board's brief, it does not argue the contrary.

However, it does argue that, even if Kende and Weintraub had had no such joint plan, the case against the respondent was proved, for it was enough if Kende independently and of his own motion seized upon Weintraub's complaint to vent his personal spleen upon Chairman. It is of course true that no one can be sure what may have actuated Kende at least in part; nothing is more difficult than to disentangle the motives of another's conduct—motives frequently unknown even to the actor himself. But for that very reason those parts of the evidence which are lost in print become especially pregnant, and the Board which had no access to them should have hesitated to assume that the examiner was not right to act upon them. A story may indeed be so unreasonable on its face that no plausibility in its telling will make it tenable, but that is seldom true and certainly was not true here. In appeals from the Board we have over and over again refused to upset findings which in cold type seemed to us extremely doubtful just because we were aware that we could not know what may have been the proper deciding factors. However limited should be the regard which the Board must give to the findings of its examiner, we cannot escape the conclusion that the record in the case at bar was such that the following finding of the examiner should have turned the scale; "the undersigned is not persuaded that Kende based his decision upon any animus against Chairman for testifying rather than on an evaluation of Weintraub's request based upon the merits." Indeed, it is at least doubtful whether the Board meant to overrule that finding except as it was involved in its own finding that Kende and Weintraub had had a joint plan to oust Chairman. That it may not have meant more appears from the statement in note seven of its opinion: "the absence of direct and detailed evidence of such a conspiracy * * * does not militate against our conviction that it was actually because of Chairman's testimony at the Board hearing and only ostensibly because of the resurrected December 30th episode that Weintraub and Kende brought about Chairman's discharge. On the evidence before us we have no substantial doubt" (surely a very curious assurance) "that discrimination occurred." Be that as it may, upon a reexamination of the record as a whole, and upon giving weight to the examiner's findings—now in compliance with the Court's directions as we understand them—we think that our first disposition of the appeal was wrong, and we hold that the Board should have dismissed the complaint.

Order reversed; complaint to be dismissed.

FRANK, Circuit Judge (concurring).

Recognizing, as only a singularly stupid man would not, Judge HAND'S superior wisdom, intelligence and learning, I seldom disagree with him, and then with serious misgivings. In this instance, I have overcome my misgivings because I think that his modesty has moved him to interpret too sweepingly the Supreme Court's criticism of our earlier opinion written by him. I read the Supreme Court's opinion as saying that we had obeyed the new statute with but one exception: We had wholly disregarded the examiner's finding which the Board rejected.

The Supreme Court [340 U.S. 474, 71 S. Ct. 466] said of our earlier opinion that "it is clear" that this court "in fact did con-

sider the 'record as a whole,' and did not deem itself merely the judicial echo of the Board." In interpreting the new statute, the Court relied upon and quoted Senator Taft's statement, "It does not go quite so far as the power given to a circuit court of appeals to review a district-court decision". And the Court, after saying that the new statute was not intended to "negative the function of the Labor Board" with reference to "findings within * * * a specialized field of knowledge," significantly added the following: "Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two * * * conflicting views, even though the court would justifiably have made a different choice had the matter been before it".

I think, then, that we must thus conclude: (1) Except that we did not consider the examiner's findings which differed from the Board's, we had not in this case disobeyed the new statute; (2) that statute does not put us, vis a vis the Board, in the same position we occupy with respect to a trial court; (3) even as to matters not within the area of the Board's so-called "expertise," we may not try Board cases de novo.

Concerning our error in disregarding the examiner's findings, Judge HAND, as I understand him, interprets as follows the Supreme Court's ruling: The Board may never reject an examiner's finding if it rests on his evaluation of the credibility of oral testimony unless (1) that rejection results from the Board's rational use of the Board's specialized knowledge or (2) the examiner has been absurdly naive in believing a witness.[1] This, I think, is somewhat

more restrictive of the Board's powers than the Supreme Court suggested, for it said: "The responsibility for decision thus placed on the Board is wholly inconsistent with the notion that it has power to reverse an examiner's findings only when they are 'clearly erroneous.' "

I would also, by way of caution, add this qualification (to which, judging from his opinions elsewhere, I gather Judge HAND will not demur): An examiner's finding binds the Board only to the extent that it is a "testimonial inference," or "primary inference," i. e., an inference that a fact to which a witness orally testified is an actual fact because that witness so testified and because observation of the witness induces a belief in that testimony.[2] The Board, however, is not bound by the examiner's "secondary inferences," or "derivative inferences," i. e., facts to which no witness orally testified but which the examiner inferred from facts orally testified by witnesses whom the examiner believed.[3] The Board may reach its own "secondary inferences," and we must abide by them unless they are irrational; in that way, the Board differs from a trial judge (in a jury-less case) who hears and sees the witnesses, for, although we are usually bound by his "testimonial inferences," we need not accept his "secondary inferences" even if rational, but, where other rational "secondary inferences" are possible, we may substitute our own.[4] Since that is true, it is also true that we must not interfere when the Board adopts either (1) its examiner's "testimonial inferences" and they are not absurd, or (2) his rational "secondary inferences."

Except as noted above, I concur.

1. Cf. what we did, vis a vis a trial judge's finding, in Gindorff v. Prince, 2 Cir., 189 F.2d 897.

2. See Wabash Corp. v. Ross Electric Corp., 2 Cir., 187 F.2d 577, 601–603, dissenting opinion, for a more elaborate explanation of "testimonial inferences."

3. See again Wabash Corp. v. Ross Electric Corp., supra, as to "derivative inferences." As there are often chains of inferences, "derivative inferences" is perhaps the preferable label.

4. See Judge Learned Hand's opinion in E. F. Drew & Co. v. Reinhard, 2 Cir., 170 F.2d 679, 684.