**HAMLIN TESTING LABORATORIES, INC., Petitioner,**

v.

**UNITED STATES ATOMIC ENERGY COMMISSION, and The United States of America, Respondents.**

**No. 16055.**

United States Court of Appeals
Sixth Circuit.

March 25, 1966.

---

Anthony B. Roshak, Detroit, Mich., for petitioner.

Sidney G. Kingsley, Asst. General Counsel (Sol.), Atomic Energy Commission, Washington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., Lionel Kestenbaum, Gerald Kadish, Attorneys, Department of Justice, Washington, D. C., Joseph F. Hennessey, General Counsel, Troy B. Conner, Jr., Trial Counsel Office of General Counsel, United States Atomic Energy Commission, Washington, D. C., on brief, for respondents.

Before PHILLIPS and EDWARDS, Circuit Judges, and THORNTON, District Judge.*

---

THORNTON, District Judge.

The Court has before it for review an order of the Atomic Energy Commission denying the application of Petitioner Hamlin Testing Laboratories for renewal of its Byproduct Material License authorizing it to perform industrial radiography. These parties were before this Court on a prior occasion by virtue of petitioner's motion for an order staying the enforcement of the Atomic Energy Commission's order denying the renewal license application. The determination of that matter is reported in the case of Hamlin Testing Laboratories, Inc. v. United States Atomic Energy Commission, 337 F.2d 221 (C.A.6, 1964).

For the purpose of introducing the subject matter here for consideration we will quote the third paragraph of that opinion. It reads as follows, at page 222:

"Hamlin's application for license renewal was denied on the basis of its conceded repeated violations of Commission regulations adopted to protect health and safety. A trial examiner, while finding such violations, exonerated Hamlin on his view that its violations were not wilful. The Commission did not follow the recommendations of its Hearing Examiner. It has not been shown to us that lack of wilfulness would necessarily bar the Commission from refusing renewal to a licensee which had repeatedly violated its regulations. Without full review of the record of the case, the material before us does not demonstrate such a strong probability that petitioner will succeed on the merits as to prompt us to stay the Commission's order."

As to the nature of the work that the Hamlin firm had been licensed to perform, respondent states that the Byproduct Material License issued to Hamlin authorized it to conduct radiography using sealed sources of radiation; that sealed sources contain radioactive "byproduct material" created by nuclear reactions; that radiography is the examination of

* Honorable Thomas P. Thornton, United States District Judge for the Eastern District of Michigan, sitting by designation.

materials by the use of penetrating radiation, as X-rays are used; and that radiography is performed by employing sealed sources in shielded containers comparable to cameras, with shutters which may be opened during exposure. From the foregoing it appears to the Court that the Hamlin firm had been licensed to use a device that contained radioactive material, in connection with the examination of equipment and/or materials. Such license was originally issued to the Hamlin firm on June 30, 1960, renewed on May 25, 1961 and expired May 31, 1963, but actually continued in effect beyond that date, since Hamlin had filed an application for its renewal on April 25, 1963. On June 14, 1963 the renewal application was denied by the Division of Licensing and Regulation of the Atomic Energy Commission. Said denial notice informed Hamlin that the basis for the denial was violation of its license and of Commission regulations in numerous respects. The denial notice contained reference to the specific matter with respect to which such violation had been found to have occurred. Such part of the notice is referred to as Part III and Part IV and will be adverted to by us shortly. Subsequent to the said denial notice by the Commission's Division of Licensing and Regulation, Hamlin requested a hearing which was held before a Hearing Examiner who issued an Initial Decision October 17, 1963 setting forth his findings, and concluding that the license should be conditionally renewed for a limited time. The Commission then sought review of said Initial Decision which was had, and a Decision rendered by the Commission on July 8, 1964, which reversed the Initial Decision of the Hearing Examiner. The foregoing sets forth the chronology leading up to the instant Petition For Review, to the contents of which we will now direct our attention. Petitioner Hamlin has set forth its Statement of Questions Involved, consisting of ten questions. Respondent has accepted said Statement of Questions. The Questions are as follows:

"I.

Does a denial of an application for license renewal constitute a "withdrawal" of the license within the meaning of Section 9(b) of the Administrative Procedure Act?

II.

Does Section 9(b) of the Administrative Procedure Act require prior notice of violations and opportunity for compliance before issuance of denial of application for license renewal?

III.

Is a denial of an application for license renewal action within Subpart B of the Commission's "Rules of Practice", 10 CFR 2?

IV.

Was the licensee guilty of willful and intentional violations of the Commission's regulations and license conditions?

V.

Did the Commission violate due process of law or depart significantly from fair play in its dealings with the licensee?

VI.

Did the licensee willfully falsify its utilization log?

VII.

Did the licensee knowingly report false information to the Commission?

VIII.

Was the licensee prejudiced by the inaction of the Commission in withholding additional user authority under the license?

IX.

Did the Commission err in overruling the renewal of the license for a limited term?

X.

Did the Commission err in reversing the Hearing Examiner's evaluation of the credibility of the witnesses and the evidence as a whole?"

We do not deem it necessary to deal specifically with each question. We will treat the issues herein as component parts of one integrated whole, said whole being necessarily controlled by certain compelling and overriding considerations. The indicated questions are therefore subject to such considerations and the answers thereto governed by the approach to the total picture.

In the earlier opinion in this matter (Hamlin Testing Laboratories, Inc. v. United States Atomic Energy Commission, supra), Judge O'Sullivan, writing for the Court, said that "[i]t will be obvious that the public interest is critically involved in the use of materials subject to regulation by the Atomic Energy Commission". Judge O'Sullivan also wrote that even though the Court may not fully understand "the dangers involved in the use of 'by-product material' by careless or unskilled hands, we can fairly infer such danger." Our review of this matter has convinced us that there is, in fact, extreme danger attached to the use of "by-product material" by unqualified persons.

The June 14, 1963 denial notice by the Commission's Division of Licensing and Regulation contained a Part III setting forth three violations based upon the disclosure resulting from 1963 inspections by the Commission of petitioner's operations. *One* was stated to be willful violation of License condition No. 13 in permitting ten named individuals to act as radiographers or radiographers' assistants without approval of the Commission. *Two* stated that the licensee knowingly falsified its utilization log by recording that Mr. Hamlin was the radiographer who used the radiography source at the Enrico Fermi Nuclear Power Plant, when in fact the source was not used by Hamlin but was used by unauthorized employees of the licensee. *Three* stated that: "The licensee knowingly reported false information to Commission inspectors during the inspection on April 30, 1963, in stating that, contrary to fact, all radiography performed (1) at the Enrico Fermi Nuclear Power Plant, Monroe, Michigan, (2) at the Defoe Shipbuilding Company, Bay City, Michigan, and (3) at the licensee's headquarters, Roseville, Michigan, had been performed by persons authorized to conduct radiography under Condition No. 13 of License No. 21–6564–1".

Part IV of the denial notice stated that the 1963 inspections disclosed the following additional violations: (1) Conducting radiography at Bay City without a calibrated and operable survey instrument, in violation of Section 31.303(a); (2) Permitting employees to conduct radiography without a film badge, in violation of Section 31.203(a); (3) Failing to make records of radiation surveys, in violation of Section 20.401(b); (4) Failing to record pocket dosimeter readings daily for radiographer Mr. Hamlin, in violation of Section 31.203(b); (5) Failing to maintain personnel monitoring records for radiographer Mr. Hamlin on Form AEC–5 or its equivalent, in violation of Section 20.401(a); and (6) "With respect to the sealed sources in its possession between June 8, 1961 and April 19, 1963, the licensee performed leak tests in violation of Section 31.105(a); failed to have leak tests conducted at intervals of six months or less as required by Section 31.105(b); and failed to make records of those leak tests conducted, in violation of Section 31.105(c)."

Part V of the denial notice states that: "It is further found that the activities of the licensee as set forth in Sections II, III and IV above demonstrate that the licensee is not qualified to own, possess, and use byproduct material as requested in the application for renewal filed by the licensee on April 25, 1963, and accordingly said application should be denied."

The Hearing Examiner upon review of said denial notice by the Commission treated the matters contained in Parts III, IV and V in the following manner: As to the first item in Part III, he found that Petitioner's use of individuals to act as radiographers or radiographers' assistants without the approval of the Commission (violation of License condition No. 13) "was less a willful violation of the specific condition of its license than a

good faith attempt to train and qualify personnel to enable them to become officially authorized users under the license". As to the second item in Part III of the denial notice, the Hearing Examiner found that the incorrect log entries were simply errors and "did not amount to a knowing falsification". These entries were the ones indicating Mr. Hamlin to have been the radiographer who used the source at the Enrico Fermi Nuclear Power Plant when in fact it was used by unauthorized employees. With respect to the third item in Part III of the denial notice, the Hearing Examiner included the following findings, among others, in paragraph 37 of his Initial Decision:

> " * * * The testimony adduced includes both direct and indirect contradictions about the circumstances out of which this charge arose. * * * the record does not support a finding that knowingly false testimony was given by either or any of the witnesses upon this point. * * * Balancing these considerations and the observed renditions of the testimony, a finding in two parts is made: (1) with a lack of candor which amounts to less than knowingly reporting false information, Mr. Hamlin permitted or led the inspectors to believe that false statements were made; and (2) the intangible effects of conflicting motivations for each witness, on the occasions of the investigation and the hearing, so shadow with doubt the precision of their respective recollections as to preclude a finding of knowingly false testimony that produced the conflict concerning the words used by Mr. Hamlin. Hence, the allegations made in Part III–3 of the denial are not sustained by the record."

We now turn to Part IV of the denial notice which we outlined above, consisting of six items. As to each of these, the Hearing Examiner found in his Initial Decision that each of said violations as alleged did occur.

In dealing with Part V of the denial notice, the Hearing Examiner stated as follows in paragraphs 44 and 45 of his Initial Decision:

> " * * * It is concluded that the entire record does not support a finding that the licensee's conduct did amount to intentional acts done knowingly in violation of applicable regulations and license conditions. The whole record falls short of showing that the licensee's conduct should be characterized as manifesting such utter disregard for regulatory requirements as to amount to willful violations. The attitude of the licensee, and its course of conduct as demonstrated at all times prior to the intiation of this investigation, are persuasive to the view that willful and intentional violations have not been committed."

> " * * * The sum of the licensee's demonstrated deficiencies casts doubt upon the adequacy of its qualifications to own, possess and use byproduct material. Nevertheless, a careful review of all of the circumstances leads to the conclusion that a denial of the license renewal application ought not here to be imposed. On the other hand, the record is not persuasive to a judgment that the license renewal should be granted as requested. * * * [I]t is concluded that a conditional renewal of license for a limited term should be ordered."

Petitioner has indicated that certain findings appearing in the Commission's Decision of July 8, 1964 reflect the controlling points of the Decision. We quote from the Decision as it pertains to these points:

1. "We adopt the findings of the hearing examiner to the extent that he found that the licensee had committed the acts charged in the notice of violation, and his findings as to the licensee's lack of candor. But we go one step further. We find that the violations were willful within the standard we have applied in * * * [citing cases]."

2. " * * * [W]e find that the conversation of April 30, 1963 be-

tween Mr. Hamlin and the Commission's inspectors was as they reported it and that he intended to deceive them and the Commission \* \* \*. \* \* \* that the words amounted to careful equivocation intended to mislead."

3. "We find on full consideration of the record that the applicant is not qualified to own, possess, and use byproduct material as requested in the application for renewal, and that the application for renewal should be denied for the protection of the public health and safety and in the public interest."

4. "We do not find that the staff committed any violations of due process of law or departed significantly from fair play in its dealings with the licensee."

5. " \* \* \* Hamlin was not prejudiced by any unreasonable delay in determining its application of March 6, 1963, for authority to use additional radiographers."

6. "In any event, however, we hold that the denial of an application for renewal of a license is not withdrawal, suspension, revocation or annulment of the license within the meaning of Section 9(b) of the Administrative Procedure Act."

7. "We hold that the denial of renewal of a license under Subpart A is not 'other action' within Subpart B."

8. "The application of Hamlin Testing Laboratories, Inc., for renewal of byproduct material license No. 21–6564–1, filed on April 25, 1963, is denied, effective thirty days after the date of this decision."

■ The Commission adopted the findings of the Hearing Examiner that the violations as charged had been committed but disagreed that they had not been willful. It took the position that there is necessity for meticulous compliance with the rules and regulations in the interest of public health and safety,

and that on the entire record there was reason to doubt that the licensee would perform in an acceptable manner, that the pattern of continued violations and false reports was persuasive that the license should not be renewed, conditionally or otherwise, as recommended by the Hearing Examiner. The foregoing findings and conclusions are supported by substantial evidence.

■■ We find here a strong analogy to the situation presented in the case of Lorain Journal Company v. Federal Communications Commission, 351 F.2d 824 (C.A.D.C.1965). In that case the Commission had reversed the Hearing Examiner and the Court affirmed the decision of the Commission. The Court pointed out that Commissions are not "relegated to the role of reviewing courts who sustain fact findings of courts of first instance unless clearly erroneous. FCC v. Allentown Broadcasting Corp., 349 U.S. 358, 364, 75 S.Ct. 855, 99 L.Ed. 1147 (1955). The responsibility for decision is placed in the Commissioners appointed by the President and confirmed by the Senate to discharge the function of administering the statutes under the agency's cognizance." Lorain Journal Company v. F. C. C., supra, 351 F.2d page 828. A number of additional observations made by the Court in *Lorain* are of equal force here. We, therefore, quote further from that opinion at page 828 because of the direct applicability of the language employed therein to the situation presented by this appeal.

" \* \* \* The agency's conclusions must be sustained if supported by substantial evidence even though there is also substantial evidence to support the contrary conclusion of the examiner. The Examiner's report is entitled only to 'such probative force as it intrinsically commands' [see Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, at 495, 71 S.Ct. 456, at 468, 95 L.Ed. 456]. In this case, even assuming that the Examiner's report reflects a plausible view of the evidence, it does not negative the Commission's conclusions as a permissible view of the

significance of the facts shown by the evidence. There are indeed items of evidence supporting the Examiner's conclusion. There are also countervailing factors. It is for the Commission to measure the force of the various vectors and to chart the resultant in the parallelogram of forces."

We find a direct parallel between that case and this one in many respects and adopt the rationale there employed in reaching our conclusion that the decision of the Commission herein on appeal must be affirmed. We can imagine no area requiring stricter adherence to rules and regulations than that dealing with radioactive materials, from the viewpoint of both public health and national security.

■ The various contentions raised by petitioner concerning procedural matters are thoroughly and competently dealt with by the Commission in its Decision. Petitioner complains, for example, that the procedures applicable to the withdrawal, suspension, revocation or annulment of a license were not here followed. The simple answer to this is that petitioner had filed an application for *renewal* of a license. The Commission's Decision relies upon the fact that a renewal application is not withdrawal, suspension, revocation or annulment, and that the complaint is not well taken for this reason. We agree. The same situation prevails with respect to petitioner's complaint concerning the applicability of Subpart B of Part 2 of the regulation dealing with suspensions, modifications and revocation of existing licenses. The proceedings here were pursuant to Subpart A of Part 2 dealing with the *issuance* and *renewal* of licenses. The Commission states that the "two subparts are mutually exclusive in scope". With this we also agree. We find no merit to plaintiff's complaint of lack of due process addressed to various procedural matters, and conclude that the Decision of the Commission should be in all respects and hereby is

Affirmed.