Augustin **NOVEROLA–BOLAINA**,
Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 21056.

United States Court of Appeals
Ninth Circuit.

May 2, 1968.

David C. Marcus (argued), Los Angeles, Cal., for appellant.

William B. Lamb (argued), Asst. U. S. Atty., William M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., Steve Suffin, Atty., I.N.S., San Francisco, Cal., Joseph Sureck, Regional Atty., I.N.S., San Pedro, Cal., Ramsey Clark, Atty. Gen., Dept. of Justice, Washington, D. C., for appellee.

Before HAMLEY and CARTER, Circuit Judges, and SMITH, District Judge.*

JAMES M. CARTER, Circuit Judge.

This case arises on a petition to review an order of the Board of Immigration Appeals (hereafter the "Board"), directing the deportation of petitioner to Mexico. The order further withdrew and overruled a contrary order by a Special Inquiry Officer (hereafter "Inquiry Officer"), of the Immigration and Naturalization Service (hereafter the "Service").

This court has jurisdiction by virtue of Section 106(a) of the Immigration and Nationality Act, 75 Stat. 651, 8 U.S.C. Sec. 1105a(a), (hereafter the "Act").

## Question Presented

The case presents one major question, viz, the scope of the Board's review of findings of an Inquiry Officer and particularly, whether the Board may make independent findings of fact on such a review.

## The Proceedings Below

Deportation proceedings were commenced against petitioner, a citizen of Mexico, on the charge that he knowingly and for *gain* assisted four aliens to enter the United States illegally on May 10, 1964, in violation of Section 241(a) (13) of the Act, 8 U.S.C. Sec. 1251(a) (13).

After a hearing, the Inquiry Officer on October 29, 1965, found and concluded, that petitioner's testimony merited credence; that the Service's evidence relating to *gain* was contradictory, vague, equivocal and unconvincing; that the record failed to present "a preponderance of reasonable, substantial and probative evidence required to support a determination of deportability;" and that the charge was not sustained. The Inquiry Officer ordered the deportation proceedings terminated.

Counsel for the Service filed notice of appeal to the Board, and on May 17, 1966, it rendered its order,

(1) that the Service appeal be sustained;

(2) that the order of the Inquiry Officer be withdrawn; and

(3) that the petitioner be deported to Mexico on the basis of the charge. The decision of the Board, after reviewing the evidence, was that the evidence "satisfactorily supports a finding that (petitioner) knowingly encouraged, assisted, abetted or aided four of the aliens to enter the United States illegally. Nevertheless the special inquiry officer has concluded that the (petitioner's) deportability has not been established. The reason is a conclusion on said official's part that the element of 'gain' * * * has not been established by a preponder-

* Russell E. Smith, District Judge, District of Montana, sitting by designation.

ance of reasonable, substantial and probative evidence as required" by the Act and the Regulations (8 C.F.R. 242.14 (a)).[1] The Board stated, "We, however, cannot concur in this conclusion."

This appeal followed. After the appeal was docketed, the Supreme Court in Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), held that "no deportation order may be entered unless it is found by clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true." (p. 286, 87 S.Ct. p. 488)

Since the decision laid down a new rule for weighing evidence different from that set forth in 8 C.F.R. 242.14(a), the case, by stipulation dated February 6, 1967, was remanded to the Board.

The Board on remand, on February 20, 1967, reconsidered the whole record, applied the new standard of proof and concluded that "the entire evidence of record, as fully described in our prior opinion and hereinbefore summarized, *clearly, unequivocally and convincingly* establishes the existence" of gain, the essential element in conflict in the case.[2] [Emphasis supplied].

Following the Board's order reaffirming its prior decision, the appeal was re-docketed in this court on motion of the Service, filed September 18, 1967.

### The Statute and the Regulation

(a) *The Statutory Framework*

Section 103(a) of the Act (8 U.S.C. Sec. 1103(a)) provides "The Attorney General shall be charged with the administration and enforcement of this chapter, and all other laws relating to the immigration * * * of aliens * *. He is authorized * * * to appoint such employees of the Service as he deems necessary, and to delegate to them or to any officer or employee of the Department of Justice in his discretion any of the duties and powers imposed upon him in this chapter * * *".

Section 242(b) of the Act (8 U.S.C. Sec. 1252(b)) provides the Inquiry Officer shall conduct proceedings to determine deportability of aliens, administer oaths, present and receive evidence, examine and cross-examine the aliens or witnesses "and, as authorized by the Attorney General, shall make determinations including orders of deportation."

Section 242(b) (4) of the Act, (8) U.S.C. Sec. 1252(b) (4)) provides, "* * * In any case in which an alien is ordered deported from the United States under the provisions of this Chapter, or any other law or treaty, the decision of the Attorney General shall be final * * *".

■ Section 101(b) (4) of the Act (8 U.S.C. Sec. 1101(b) (4)) defines the term "Special Inquiry Officer" as one who is "designated and selected by the Attorney General * * * to conduct such proceedings." Though not provided for in this section, one of such proceedings would be a hearing on deportation charges. The Inquiry Officer shall "perform such duties * * * as the Attorney General shall prescribe."

Section 106(a) (4) of the Act (8 U.S.C. Sec. 1105a(a) (4)) provides "the petition" (for review) "shall be determined solely upon the administrative record upon which the deportation order is based and the *Attorney General's findings of fact,* if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be

---

1. On March 17, 1966, the Regulation cited used such language as to the standard of proof. As we see later, the Regulation, 8 C.F.R. 242.14(a) was amended February 15, 1967.

2. We do not review the evidence since there is no contention that the evidence was not sufficient to meet the new test and sustain the charge. Petitioner had conceded at the hearing before the Inquiry Officer all elements of the charge except that of gain. The question on appeal is not the sufficiency of the evidence but the power of the Board to make its own findings, contrary to those of the Inquiry Officer.

conclusive; * * *". [Emphasis supplied]

The quoted portion of this section concerns review in the court of appeals which is not a problem in this case.[3] Its significance to our problem is the statement concerning the Attorney General's findings of fact.

(b) *The Regulations*

Section 103(a) of the Act (8 U.S.C. Sec. 1103(a)) provides the Attorney General "shall establish such regulations * * * as he deems necessary for carrying out his authority under the provisions of this chapter." Such regulations, of course, if within the scope of the Attorney General's statutory powers, have the force and effect of law. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

Regulations were promulgated and published in the Federal Register.

Section 3.1 of the Regulations, 8 C.F.R., provides for a "Board of Immigration Appeals. (a) Organization. There shall be in the Department of Justice a Board of Immigration Appeals, which shall be under the supervision and direction of the Attorney General and shall be responsible solely to him * * *

(b) Appellate Jurisdiction. Appeals shall lie to the Board of Immigration Appeals from the following * * * (1) * * * (2) Decisions of special inquiry officers in deportation cases as provided in part 242 of this chapter.

(c) Jurisdiction by Certification. The Commissioner, or any other duly authorized officer of the Service, or the Board may in any case arising under paragraph (b) of this section require certification of such case to the Board.

(d) Powers of Board. (1) Generally. Subject to any specific limitation prescribed by this chapter, in considering and determining cases before it as provided in this part, *the Board shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case * * *".* [Emphasis supplied]

Section 3.6 of the Regulations, 8 C.F.R., provides "Stay of execution of decision. The decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of the appeal * * * nor shall such decision be executed while the appeal is pending * * *".

Section 242.8 of the Regulations, 8 C.F.R., concerns special inquiry officers and reads in part "(a) Authority. In any proceeding conducted under this part, the special inquiry officer shall have authority to determine deportability and to make decisions, including orders of deportation as provided by Section 242(b) of the Act * * *".

Section 242.14 of the Regulations, 8 C.F.R., at the time of the hearing before the inquiry officer, provided in part, "Evidence. (a) Sufficiency. A determination of deportability shall not be valid unless based on reasonable, substantial and probative evidence."

Following the *Woodby* case, supra, in the Supreme Court, the regulation was amended in 32 F.R. 2883 as of February 15, 1967, to read: "242.14 Evidence. (a) Sufficiency. The determination of deportability shall not be valid unless it is found by clear, unequivocal and convincing evidence that the facts alleged as grounds of deportation are true."

Section 242.20, C.F.R., provides "Finality of the Order. The order of the special inquiry officer shall be final *except* when the case is certified to the Board as provided in part 3 of this chapter, or an appeal is taken to the Board by the Respondent or trial lawyer." [Emphasis supplied]

## DISCUSSION

We now approach the only real issue in the case, the right and power of the Board to make its own independent find-

---

3. See footnote 2.

ings even though contrary to findings of an inquiry officer.

We note at the outset that nowhere in the Act or the Regulations is there an *express* statement that the Board may make such independent findings but we conclude it has such power.

It is apparent from the statutory set up that the Attorney General is charged with the final decision on the facts and law as to deportability; that the Special Inquiry Officer is set up by statute; that by the regulations which the Attorney General was empowered to promulgate, the Board of Appeal has been set up to "exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case." Section 3.1(d) (1), 8 C.F.R.

The statute is clear that it is the administrative record made "and the Attorney General's findings of fact" which shall determine the case. Section 106(a) (4) of the Act (8 U.S.C. Section 1105a (a) (4)).

Thus the Special Inquiry Officer and the Board are the tools through which the power of the Attorney General are exercised. They are responsible to him. It is the Attorney General's findings which control. If he is not satisfied with the findings he makes other independent findings. If his Board of Appeal is not satisfied with an Inquiry Officer's findings, the Board of Appeal, as the representative of the Attorney General, can make independent findings.

We think this holding is sustained and confirmed by the discussion which follows.

### (1) *Cases under Prior Acts*

Cases under previous immigration acts are persuasive. The Attorney General under Section 103(a) of the present Act, 8 U.S.C. Sec. 1103(a), is charged with the administration and enforcement of Chapter 12 of the Act concerning immigration and nationality. See Bridges v. Wixon, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945) involving a deportation under the Immigration Act of 1940. 8 U.S.C. Sec. 155, then in effect, gave the Attorney General similar power. The court said at p. 153, 65 S.Ct. at p. 1452:

"The person to whom the power to deport has been entrusted is the Attorney General or such agency as he designates. 8 U.S.C. [§] 155 [, 8 U.S.C.A. § 155.] He is an original trier of fact on the whole record."

In United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 266, 74 S.Ct. 499, 98 L.Ed. 681 (1954) the court was considering a deportation question under Sec. 19(c) of the Immigration Act of 1917 (39 Stat. 889 as amended) and the applicable regulations in 8 C.F.R. (1949 and 1951), both prior to the Immigration and Nationality Act of 1952, effective December 24, 1952, here involved, and its applicable regulations.

However, language in 8 C.F.R. (1949), Sec. 90(3)c, considered in the case was practically identical to the regulation we are considering, Sec. 3.1(d), 8 C.F.R. The language, common to both regulations, that the Board "shall exercise such *discretion and authority* conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case," was construed. [Emphasis supplied] The court held the regulation gave the Board *discretion* equal to that of the Attorney General. It should follow that the language gives the Board *power* equal to that of the Attorney General. The word "authority" compels this conclusion.

### (2) *The Practice of the Board*

It is the common practice of the Board to make its own independent findings of fact. The *Woodby* case, supra, in note 2, 385 U.S. page 278, 87 S.Ct. page 484, noted that the Board had made its own independent findings of fact in that case and this was "in conformity with its usual practice."

Gordon and Rosenfield Immigration Law and Procedure, § 1.10(e), page 1–58, 1967 Revised Edition quotes the follow-

ing statement by the Board Chairman as to its functions:

"Unlike appellate courts, on questions of fact the Board is not limited to a determination if there was substantial evidence upon which the finding of the Special Inquiry Officer was based. The Board has the power and authority to review the record and makes its own conclusions as to facts * * * In a word, the Board may make a de novo review of the record and makes its conclusions and findings irrespective of those made by the Special Inquiry Officer * * *".

■ Following the case of United States ex rel. Brzovich v. Holden, 222 F.2d 840 (7 Cir. 1955) which we will discuss later, the Attorney General ruled in an administrative proceeding that the Board has power to make independent findings of fact which were contrary to those of an inquiry officer. Matter of B—, 7 I. & N. Dec. 1, 36 (1956). The interpretation placed by an agency, charged with administering the statute and its regulations is entitled to weight and consideration. See Power Reactor Development Co. v. International Union of Electrical, Radio and Machine Workers, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1960).

(3) *The Brzovich case, supra, from the 7th Circuit*

In the *Brzovich* case, supra, 222 F.2d 840 (1955), the 7th Circuit held alternatively:

(1) That the Board of Immigration Appeals had no authority to make findings of fact, and

(2) The findings made by the Board of Appeals were arbitrary and capricious. The findings of the Board were held erroneous as a matter of law as being arbitrary and capricious.

The court could find "nothing in the statute or rules and regulations which confer upon the Board any authority other than to hear oral argument on appeal. It appears evident that it is given no authority to make findings of fact or to try an issue *de novo*. It is endowed with the typical reviewing function," (222 F.2d 840, 843).

For the reasons stated below, including the enactment of relevant legislation after *Brzovich* was decided, we decline to follow the holding of that case that the Board has no authority to make findings of fact.

The court in *Brzovich* quoted from comments on the Act by the legislative assistant to the House Judiciary Committee as follows: " 'The Board has appellate jurisdiction from (1) Decisions of Special Inquiry officers in exclusion and deportation cases * * *' Title 8 U.S.C.A., p. 59."

The court then considered the proceedings under the National Labor Relations Act (29 U.S.C. Sec. 151 et seq.), and the case of Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1961), which held that where the Board (NLRB) makes findings contrary to the recommendations of its hearing officer, a court on review in determining the substantiality of the evidence, must consider and evaluate the recommendations of the hearing officer as a part of the record.

The opinion did not cite or discuss the regulations, particularly Sec. 3.1(d), 8 C.F.R., stating, "* * * the Board shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case * * *" to-wit, to make the final determination of fact as to deportability. The 7th Circuit in *Brzovich,* supra, equated the review of the Board to that of a court on review.

Sec. 106(a) (4), 8 U.S.C. § 1105a(a) (4) was not then in existence, having been added Sept. 26, 1961. P.L. 87–301, Sec. 5(a), 75 Stat. 651. The statute states that it is the Attorney General's findings of fact which control. It was not available for the 7th Circuit's consideration in its opinion.

#### (4) *De Novo Review is typical in administrative agencies*

The NLRB rule is shown in the *Universal Camera* case, supra, where the court said, "The responsibility for decision thus placed on the Board is wholly inconsistent with the notion that it has power to [reverse] an examiner's findings only when they are 'clearly erroneous.' Such a limitation would make so drastic a departure from prior administrative practice that explicitness would be required." (p. 492, 71 S.Ct. p. 467).

As to the rule in F.C.C. proceedings, the case of F.C.C. v. Allentown Broadcasting Co., 349 U.S. 358, 364, 75 S.Ct. 855, 859, 99 L.Ed. 1147 (1955) states:

> "The Court of Appeals' conclusion of error as to evasiveness relies largely on its understanding that the Examiner's findings based on demeanor of a witness are not to be overruled by a Board without a 'very substantial preponderance in the testimony as recorded,' citing [National Labor Relations] Board v. Universal Camera Corp., [2 Cir.,] 190 F.2d 429, 430. We think this attitude goes too far. It seems to adopt for examiners of administrative agencies the 'clearly erroneous' rule of the Fed.Rules Civ. Proc., 52(a) [, 28 U.S.C.A.,] applicable to courts. * * *"

The court goes on to quote the language above set forth in this opinion from the *Universal Camera Corp.* case. For the same rule as to the power of the Atomic Energy Commission, see Hamlin Testing Laboratories v. United States Atomic Energy Commission, 357 F.2d 632, 637–638 (6 Cir. 1966).

■ As noted elsewhere, we are not here concerned with the scope of our review, as a circuit court, of the Board's or the Attorney General's findings, since the point is not raised. Moreover, there was ample evidence to support the findings under the rule of the *Woodby* case and the new regulation 242.4, 8 C.F.R., effective February 17, 1967.

The Administrative Procedure Act, 60 Stat. 24 in Sec. 8, 5 U.S.C. Section 1007, provides that the reviewing body, on administrative appeal, unless it limits the issues, has "all the powers which it would have in making the *initial decision*." [Emphasis supplied] This same phrase *initial decision* is used in the regulations under the Immigration and Nationality Act, Sections 3.3(a) and 3.7, 8 C.F.R. We are not applying the Administrative Procedure Act in this case since its application is expressly modified by Sec. 106(a) of the Act, 8 U.S.C. Sec. 1105a, but the similar use of the term "initial decision" is significant.

#### (5) *Ninth Circuit cases*

Two cases in this circuit are pertinent.

In Tovar v. Immigration and Naturalization Service, 368 F.2d 1006 (9 Cir. 1966), cert. den. 388 U.S. 915, 87 S.Ct. 2128, 18 L.Ed.2d 1356, a special inquiry officer determined Tovar was deportable, under Section 241(a) of the Act. 8 U.S.C. Section 1251(a) (4). Although Tovar had been convicted twice of "vagrancy, lewd" and was a registered sex offender, the special inquiry officer determined he was a person of good moral character and eligible for suspension of deportation. On such ground he granted an application for suspension of deportation. The Board of Immigration Appeals held the inquiry officer was in error and denied the application for suspension of deportation.

This court per curiam, on a petition for review, found to be without merit the contention that the Board was without authority to review the special inquiry officer's determination that Tovar was a person of good moral character.

In Brunner v. Del Guercio, 259 F.2d 583 (9 Cir. 1958) the special inquiry officer ordered deportation proceedings terminated and the Board directed the case be certified to it and that the final order would be made by the Board. The Board withdrew the order of the special inquiry officer, allowed departure with provision that if Brunner did not depart, that the order of deportation "be reinstated and executed."

Although this court reversed and remanded on the ground that neither the

special inquiry officer nor the Board made an essential finding deemed necessary for deportation, the court said (p. 585):

"However, the contention of Brunner that the Board of Immigration Appeals had no jurisdiction to review and withdraw the order of the Special Inquiry Officer has no foundation." citing the power of the Board to require certification, 8 C.F.R Sec. 6.1(c) 1952 Ed., [now 8 C.F.R. Sec. 3.1(c)]; and citing 8 C.F.R. Sec. 242.61(e), 1952 Ed. (now 8 C.F.R. Sec. 242.20), providing "the order of the special inquiry officer shall be final except when  *  *'" so certified.

## CONCLUSION

We conclude that it is the Attorney General's findings which control; that the inquiry officer and the Board of Appeals are responsible to him and that the Board of Appeals has the power to review the findings of the inquiry officer and if necessary, make its own independent findings, contrary to those of the inquiry officer.

On this review, the order of deportation is affirmed.