If the defendant in fact committed the offenses for which he has been convicted, his conduct is most certainly both legally culpable and morally reprehensible. It is because of the emotional reaction that such acts engender, coupled with our natural zeal to protect children and to punish those who harm them, that courts must be especially careful to remain objective when presiding over or reviewing cases of this nature. The question before us, however, is whether the State has presented legal evidence that can be considered in determining whether the State has met its burden of proof beyond a reasonable doubt. If the earlier, now recanted, testimony is "substantive evidence," a case can be submitted to the jury on that testimony alone. The rule announced by the majority is not limited to sexual offenses and will apply to all criminal prosecutions, and, for that matter, to all civil actions.
The rule prohibiting the use of prior inconsistent statements as substantive evidence, which the majority does away with in its opinion, has been a fundamental part of the accused's right to a fair trial for over 100 years. Because of the important constitutional aspects of the rule, I cannot agree with the majority's implication that it can be abolished as readily as a rule of procedure could be or as easily as a merely arbitrary rule of evidence. In addition, I do not agree that the now-abolished rule was based solely on the hearsay rule. It was also based on the accused's right to confront and thoroughly cross-examine witnesses against him, a right guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution and Art. I, § 7, of the Alabama Constitution. "While hearsay rules and the Confrontation Clause . . . protect similar values, it is quite a different thing to suggest . . . that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law."California v. Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933,26 L.Ed.2d 489 (1970).
Cross-examination has been called "the greatest legal engine ever invented for the discovery of truth." 5 J. Wigmore, ATreatise on the System of Evidence in Trials at Common Law § 1367, at 29 (3d ed. 1940). Cross-examination must be an adversarial proceeding to be effective. Ruhala v. Roby,379 Mich. 102, 150 N.W.2d 146 (1967). The goals of cross-examination are best achieved by questioning the witness at the time the statement is made, in the presence of the same trier of fact who must ultimately assess the witness's credibility. The principal virtue of cross-examination "is in its immediate application of the testing process. Its strokes fall while the iron is hot." State v. Saporen, 205 Minn. 358,362, 285 N.W. 898, 901 (1939).
Under the change effected by the majority's opinion, the accused's opportunity to confront the witness against him in a face-to-face, adversarial proceeding, at the time the damaging statement is made, is destroyed. Instead, the accused is placed in the untenable position of cross-examining a now friendly witness regarding testimony given at a time when the witness was hostile. Instead of trying to impeach the witness's present testimony, the accused must, instead, attempt to mitigate the impact of the witness's prior statement, while at the same time trying to make the witness's present testimony appear credible. The near-impossibility of this undertaking has been recognized by the Michigan Supreme Court:
 "No matter how deadly the thrust of the cross-examiner, the ghost of the prior statement stands. His questions will always sound like attempts to permit the witness to explain why [she] changed [her] story before coming to court, with the jury being left to infer that [she] might have been induced to change [her] story in the intervening months or years, for some unrevealed and sinister reason."
Ruhala v. Roby, supra, 379 Mich. at 128, 150 N.W.2d at 158.
An additional problem created by allowing prior inconsistent statements to be used as substantive evidence is that the jurors *Page 142 
are unable to adequately assess the witness's credibility by observing her demeanor at the time the prior statement was given. Instead, they must rely on the reading of a cold written record. That is simply not sufficient. As noted by Judge Learned Hand, "the bearing and delivery of a witness will usually be the dominating factors" in determining the witness's credibility. NLRB v. Universal Camera Corp., 190 F.2d 429, 430
(2d Cir. 1951).
The perjury question is also very troubling. If a witness testifies that a traffic light was red and then testifies that it was green, what probative effect should the law give to that witness's testimony? In mathematics when you add +1 and -1, the answer is 0. How can a nullity add any weight on the "guilty" side of the scales of justice? While we are not dealing with mathematics, I am nevertheless concerned that this kind of self-contradictory testimony can be used to overcome the presumption of innocence.
For the foregoing reasons, I must dissent.
JONES and ADAMS, JJ., concur.