ROGERS, Circuit Judge,
concurring in part and dissenting in part.
With respect, it is not our job to second-guess the labor policy determinations of the National Labor Relations Board. Yet in my view that is what we are doing by taking sides in an intra-Board dispute on an issue that is essentially one of labor policy rather than one of fact or pure law. I therefore dissent from the reversal of the Board’s determination that the employer’s prediction of consequences was not an unfair labor practice in this case. I concur in the remainder of the majority opinion.
The Board in this case ruled in most respects in favor of the Union. It held that threatening the employees for honoring the picket line, surveilling the picket line, interrogating David Lawrence, prohibiting Rose from wearing the union t-shirt, firing Rose, and refusing to hire the union-affiliated job applicants amounted- to unfair labor practices in this case. On the claim that the employer’s prediction of consequences amounted to a threat, however, the Board reasoned as follows:
Eagleson’s statement to the Sheet Metal Workers Union shop steward represented his understanding of the collective-bargaining agreement that the Plumbers Union wanted the Respondent to sign. In expressing his opinion, he repeatedly quoted from the agreement and made it clear that he was relying upon the language of the proposed agreement as the basis for his opinion.
To be sure, Member Liebman dissented, reasoning that Eagleson’s statements were “neither based on objective fact, nor did they address consequences beyond Respondent’s control.”
If, as Board members, we would agree with Member Liebman, that alone is insufficient to warrant reversal in this case. It is the majority of the Board that has power within our system to set labor policy, and it is for reviewing courts to reverse only if there is not substantial evidence to support the facts found by the Board majority, Allentown Mack Sales and Serv. v. NLRB, 522 U.S. 359, 366-67, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998), or if there is not substantial evidence to support the Board’s application of law to particular facts, Turnbull Cone Baking Co. of Tenn. v. NLRB, 778 F.2d 292, 295 (6th Cir.1985). Finally, the Board’s interpretation of the National Labor Relations Act is entitled to Chevron deference and its reading of the statute need only be reasonable. FiveCAP, Inc. v. NLRB, 294 F.3d 768, 776 (6th Cir.2002).
First, there is no real factual dispute as to what Eagleson said; the record is clear that Eagleson said to Ruddy that, “If we let the Plumbers come in here, it is going to take three or four of your men’s positions. Who would [you] like to get rid of here?” There may be a dispute as to what the underlying motivation of the statement was, or how the statement was perceived, *441 but these are the type of facts or inferences for which deference to agency expertise is most warranted, notwithstanding a contrary determination by the ALJ, even if this court would have decided the issue differently in the first instance. Id. at 776. As Judge Frank cogently explained on remand from the Supreme Court in Universal Camera, a case like this one in which the Board came to a factual conclusion different from that of the hearing examiner (as ALJs were then called):
An examiner’s finding binds the Board only to the extent that it is a ‘testimonial inference,’ or ‘primary inference,’ i.e., an inference that a fact to which a witness orally testified is an actual fact because that witness so testified and because observation of the witness induces a belief in that testimony. The Board, however, is not bound by the examiner’s ‘secondary inferences,’ or ‘derivative inferences,’ i.e., facts to which no witness orally testified but which the examiner inferred from facts orally testified by witnesses whom the examiner believed. The Board may reach its own ‘secondary inferences,’ and we must abide by them unless they are irrational; in that way, the Board differs from a trial judge (in a juryless case) who hears and sees the witnesses, for, although we are usually bound by his ‘testimonial inferences,’ we need not accept his ‘secondary inferences’ even if rational, but, where other rational ‘secondary inferences’ are possible, we may substitute our own.
NLRB v. Universal Camera Corp., 190 F.2d 429, 432 (2d Cir.1951) (Frank, J., concurring) (footnotes omitted).
In particular, reversal is not required because the Board’s analysis of the facts focused on the particular conversation at issue, while the ALJ looked at the “broader context.” Maj. Op. at 438. The Board gets to focus where it wants, as long as there is substantial evidence to support its conclusions. Our deference is accorded to the Board and not the ALJ. W.F. Bolin Co. v. NLRB, 70 F.3d 863, 870 (6th Cir.1995). Furthermore, the Board majority explicitly acknowledged that the test under § 8(a)(1) requires an examination of the totality of the circumstances and concluded that Eagleson’s statements were not coercive under this standard. Thus, the Board cannot be faulted for failing to consider the context in which the statements were made, especially in light of the fact that the Board’s opinion as a whole establishes that the Board was well aware of the context.
Second, the Board made no determination in contravention of the NLRA, or court precedent. The only suggested legal basis for reversal of the Board in this case, apart from the general obligation not coer-cively to threaten job loss, is the requirement that employer predictions of adverse consequences of unionization be based on “precise objective facts.” ITT Auto. v. NLRB, 188 F.3d 375 (6th Cir.1999). The Board’s conclusion that Eagleson’s statements were protected (that is, based on “precise objective facts”) is supported by the record. In ITT Automotive, it should be noted, we upheld rather than reversed the Board’s determination regarding coercion. We summarized the law in this area in ITT Automotive as follows:
In balancing the employer’s ... right to free expression against the employee’s right to free association, the Supreme Court has observed that:
[A]n employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union.... He may even make a prediction as to the precise effects he believes unionization will have on his company. In such a case however, *442 the prediction must be carefully phrased on the basis of objective fact to convey an employer’s belief as to demonstrably probable consequences beyond his control.... If there is any implication that an employer may or may not take action solely on his own initiative for reasons unrelated to economic necessities and known only to him, the statement is no longer a prediction based on available facts but a threat of retaliation based on misrepresentation and coercion.
Gissel Packing, 395 U.S. at 618, 89 S.Ct. 1918, 23 L.Ed.2d 547. Under Gissel Packing, an employer may claim the protections of § 8(c) as a defense to an unfair labor practice charge of unlawful coercion in violation of § 8(a)(1). See, e.g., NLRB v. Pentre Elec., 998 F.2d 363, 368-69 (6th Cir.1993). Indeed, “ ‘it is often difficult in practice to distinguish between lawful advocacy and threats of retaliation’ ” when an employer seeks to point out to workers the adverse consequences of unionization during a representation election. Id. at 369 (quoting NLRB v. Village IX, Inc., 723 F.2d 1360, 1367 (7th Cir.1983)).
ITT Auto., 188 F.3d at 385. Indeed, the very difficulty that we identified in ITT Automotive compels our deference in this case — the Board’s expertise and competence lie in judging the effects of employer speech in the context of the employment relationship. NLRB v. Gissel Packing Co., 395 U.S. 575, 620, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). The Board’s conclusion in this case that Eagleson’s statements did not rise to the level of threats or intimidation is supported by such evidence that “a reasonable mind might accept as adequate.” ITT Auto., 188 F.3d at 384.
If the dissenting Board member’s position had carried the day before the Board, that determination would warrant deference, just as we uphold the other determinations in favor of the Union in this case. But the law requires us to uphold the decisions of the Board majority, if consistent with the law and supported by substantial evidence. I therefore respectfully dissent from Part V of the majority opinion.